# IN RE KARL J.*
# (AC 28161)

DiPentima, Gruendel and Mihalakos, Js.

Argued April 23—officially released September 2, 2008

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*David B. Rozwaski*, for the appellant (respondent mother).

*Barry A. Charles*, for the appellee (respondent father).

*David J. Reich*, for the appellee (minor child).

*Opinion*

DiPENTIMA, J. The respondent mother appeals from the trial court's judgment awarding custody and guardianship of her minor child, Karl J., to the child's paternal aunt and uncle.[1] On appeal, the respondent argues that the court improperly determined that it would be in the best interest of the child to remain in the care and custody of his paternal aunt and uncle. We affirm the judgment of the trial court.

The following facts and procedural history inform our disposition. The child was born in 1995. From the date of his birth, the respondent served as his primary caregiver. In April, 2000, the respondent's financial difficulties led her to move into a hotel with the child and his older sibling. On October 27, 2000, following a report that the respondent had left her children alone while she was working the third shift, the petitioner, the commissioner of children and families, issued a ninety-six hour administrative hold and removed the children from

---

[1] When the petitioner, the commissioner of children and families, instituted neglect proceedings concerning the child, both the mother and father of the child were named and served as respondents. In the present action, only the respondent mother is appealing, and, thus, for purposes of this appeal, all references to the respondent herein shall refer solely to the mother.

her care. See General Statutes § 17a-101g. The petitioner subsequently filed a neglect petition. On October 30, 2000, the court granted an ex parte order for temporary custody to the petitioner. On November 16, 2000, the court adjudicated the child neglected, vacated the order of temporary custody, placed him in the custody and guardianship of the father and ordered protective supervision from November 16, 2000, to May 16, 2001. On March 22, 2001, the court vacated the order of protective supervision, which gave the father full custody and guardianship without the involvement of the department of children and families. Eight months after the court had awarded custody and guardianship to the father, the child was sexually abused by a family member. After learning of the sexual abuse, the father asked his sister and her husband to care for the child. The child began living with his paternal aunt and uncle in Florida in August, 2001. The respondent had not had contact with the child since approximately February, 2001, and learned of his sexual abuse and subsequent move to Florida in an October, 2001 newspaper article.[2]

On December 7, 2004, the respondent filed an application for reinstatement of guardianship. The respondent subsequently filed a motion for immediate visitation and a motion for immediate return of the child. The

---

[2] Shortly after taking the child to Florida, the aunt and uncle reported the abuse to the Florida department of children and families. On September 19, 2001, the Florida department of children and families filed a shelter petition and subsequently obtained an order awarding custody to the aunt. The Florida department of children and families then moved to terminate the parental rights of both the respondent and the father. The father voluntarily surrendered his parental rights, and the Florida court terminated the respondent's parental rights on August 27, 2003. The respondent appealed, and the District Court of Appeals of the State of Florida, Fifth District, reversed, holding that the court lacked jurisdiction. *D.S.* v. *Dept. of Children & Families*, 888 So. 2d 85 (Fla. App. 2004). On remand, the trial court vacated the termination of parental rights with respect to both the respondent and the father. On March 16, 2005, the Connecticut Superior Court determined that it had jurisdiction over the respondent's motion.

father and the child, through counsel, objected to both motions. On April 20, 2005, the parties stipulated that the child would begin therapy to determine the appropriateness of visitation with the respondent. On July 21, 2005, the child, through counsel, filed a motion for immediate temporary custody to be granted to the aunt and uncle, to which the respondent objected.

On November 17, 2005, the father petitioned the court to transfer custody and guardianship to the aunt and uncle and to consolidate such action with the respondent's motion for reinstatement. The respondent objected. The motions were consolidated, and a trial was held over seven days from December 5, 2005, to June 5, 2006.[3] On September 15, 2006, the court, by memorandum of decision, denied the respondent's motion and granted the father's motion, thereby transferring custody and guardianship of the child to the aunt and uncle. This appeal followed.[4] Additional facts will be set forth as necessary.

The respondent claims that the court improperly denied her motion for reinstatement of guardianship and improperly granted the father's motion for transfer of guardianship to the aunt and uncle. Specifically, the respondent argues that it is in the best interest of the

[3] On June 20, 2006, the respondent filed a motion for emergency relief, seeking the immediate return of the child. The respondent represented that the aunt could no longer care for the child due to a change in her living circumstances. The father and the child both objected. On June 27, 2006, the court denied the emergency motion and issued an order granting temporary custody to the petitioner. On July 6, 2006, the court returned temporary custody to the aunt pending a decision in the underlying case. The respondent then filed a motion to enlarge the trial proceedings or to open the trial for new evidence. On July 13, 2006, all of the parties stipulated that the court could consider the fact that the aunt had represented that she could no longer care for the child without a court order granting her custody.

[4] The child, through counsel, filed a brief in which he argued that the judgment should be affirmed. The petitioner has not taken a position in this appeal and elected not to file a brief.

child to be returned to his mother given that the circumstances that necessitated his original removal from her care no longer exist. We disagree.

We begin with the standard of review. "To determine whether a custodial placement is in the best interest of the child, the court uses its broad discretion to choose a place that will foster the child's interest in sustained growth, development, well-being, and in the continuity and stability of its environment. . . . We have stated that when making the determination of what is in the best interest of the child, [t]he authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *In re Patricia C.*, 93 Conn. App. 25, 32–33, 887 A.2d 929, cert. denied, 277 Conn. 931, 896 A.2d 101 (2006); *In re Haley B.*, 81 Conn. App. 62, 67, 838 A.2d 1006 (2004); see also Practice Book § 35a-16. "[G]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . [Appellate courts] are not in a position to second-guess the opinions of witnesses, professional or otherwise, nor the observations and conclusions of the Juvenile Court when they are based on reliable evidence." (Citation omitted; internal quotation marks omitted.) *In re Jeisean M.*, 270 Conn. 382, 397–98, 852 A.2d 643 (2004).

General Statutes § 46b-129 (m) provides in relevant part that "a parent . . . may file a motion to revoke a

commitment, and, upon finding that cause for commitment no longer exists, and that such revocation is in the best interests of such child or youth, the court may revoke the commitment of such child or youth. . . ." Although the court here found that the reasons for the commitment no longer existed, the court concluded that it was in the best interest of the child to remain with his aunt and uncle. The court's conclusion that the reasons for the commitment no longer exist is not at issue in this appeal. Thus, we turn our attention to the best interest of the child.

In its memorandum of decision, the court credited the testimony of Howard Benditsky, a licensed clinical psychologist who evaluated the respondent. Benditsky noted that the respondent was more concerned about being reunited with her child than with any possible trauma the child might suffer as a result of being taken out of his home in Florida. Benditsky concluded that given the child's psychological history and desire to remain in Florida, reunification and visitation with the respondent should occur only after there has been some time for the relationship to be reestablished.

The court also relied on the testimony of Cynthia L. Hodges, a mental health therapist who specializes in the treatment of victims of sexual assault and who treated the child from October, 2001, to February, 2002. She explained that the child underwent treatment for developmental delays affecting his speech, motor function, vision and hearing and has been diagnosed with reactive attachment disorder.[5] Hodges also testified that the child had bonded with his aunt and had made significant improvements in speech and behavior under his aunt's care. It was her opinion that it would be in the

---

[5] In her testimony, Hodges explained that reactive attachment disorder is "markedly disturbed and developmentally inappropriate social relatedness . . . that begins before the age of five years and is associated with grossly pathological care."

child's best interest to remain with the aunt and uncle because it would give him an important sense of permanency, and a return to Connecticut likely would be traumatic enough to trigger a relapse of the child's sleep disturbances and aggressive behavior.

The court credited the testimony of Gloria Accetta, who had been appointed as the child's guardian ad litem by the Florida county coordinator for the guardian ad litem program. Accetta testified that she had seen significant improvements in the child's health and well-being since he had been living with the aunt and uncle. She also recommended that the child remain with his aunt and uncle. The court also credited the testimony of the aunt. She testified that she had left her job to care for the child on a full-time basis and frequently would drive 150 to 200 miles per week to take him to his therapy and medical appointments. The aunt stated that she was not opposed to gradual contact with the respondent as long as it would not prove detrimental to the child.

Finally, the court relied on the testimony of David C. Dohm, a mental health specialist who evaluated the child. Dohm diagnosed the child with developmental disorder, reactive attachment disorder and attention deficit disorder. He testified that the child had made progress in dealing with his reactive attachment disorder due to the stability in his current environment and the aunt's "invaluable" care. He opined that it would not be healthful for the child to return to Connecticut and that any contact with the respondent would threaten the child's stability significantly and the progress he had made.

As our review of the evidence before the court reveals, there were ample facts on which it could conclude that it was in the best interest of the child to remain with his aunt and uncle. The evidence before the court showed that the child had made significant

improvements in his mental, physical and emotional health while in the care of his aunt and uncle. Additionally, the court noted that the child referred to his aunt and uncle as "mom and dad" and adamantly expressed a desire to remain in Florida with them. Although our Supreme Court has recognized that "the best interests of the child are usually served by keeping the child in the home with his . . . parents"; *In re Juvenile Appeal (83-CD)*, 189 Conn. 276, 285, 455 A.2d 1313 (1983); the court also has noted consistently "the importance of permanency in children's lives." *In re Jeisean M.*, supra, 270 Conn. 400.

Cognizant of our deferential standard of review, we conclude that the court's decision to deny the respondent's motion for reinstatement of guardianship and to grant the father's motion for transfer of custody and guardianship was not an abuse of discretion. The court reasonably concluded that it was in the child's best interest to remain with his aunt and uncle.

The judgment is affirmed.

In this opinion the other judges concurred.