IN RE ANTHONY A.*
(AC 29399)
(AC 29400)

Harper, Beach and Berdon, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued October 28, 2008—officially released February 17, 2009

*Adis M.*, pro se, the appellant (respondent mother).

*Rosalina R.*, pro se, the appellant (intervenor).

*Michael J. Besso*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*James W. Lux*, for the minor child.

*Opinion*

BEACH, J. The respondent mother[1] appeals from the judgment of the trial court rendered in favor of the petitioner, the commissioner of children and families, terminating the respondent's parental rights with respect to her minor child, Anthony A. In AC 29399, the respondent claims that the court improperly terminated her parental rights. In AC 29400, the intervening maternal great-grandmother of Anthony, Rosalina R., appeals from the court's denial of the motion to revoke Anthony's commitment and to transfer guardianship of Anthony from his foster parents to her.[2] She claims that the court improperly failed to find that it was in the best interest of Anthony to have guardianship transferred to her. We affirm the judgment of the trial court.

The record reflects the following facts and procedural history. At the time of trial in 2007, the respondent was nineteen years old and was residing at the home of

---

[1] When the petitioner instituted termination proceedings, both the mother and father of the child were named and served as respondents. In the present action, only the respondent mother is appealing, and, thus, for purposes of this appeal, all references to the respondent herein shall refer solely to the mother.

[2] In her statement of issues, the intervenor also claims that the court improperly failed to order the department of children and families to perform a thorough investigation of her petition to adopt Anthony. Although the issue was included in her statement of the issues, her brief fails to provide any legal authority or analysis on this issue. That notwithstanding, there is no evidence in the record that the intervenor had filed a petition to adopt Anthony. The court did not address the issue in its memorandum of decision, and the intervenor failed to seek an articulation. We conclude that the record is inadequate to review this claim. See *Ackerly & Brown, LLP* v. *Smithies*, 109 Conn. App. 584, 589 n.4, 952 A.2d 110 (2008).

her grandmother, the intervenor. Anthony's father was twenty years old and was residing with Anthony's paternal grandmother. On March 22, 2006, when Anthony was nine months old, the respondent and Anthony's father were involved in an altercation during which the respondent told the father that she was going to take Anthony from him. Anthony was pulled between the respondent and Anthony's paternal grandmother as each tried to take him. Anthony was not harmed. As a result of this incident, the respondent was arrested.

On March 22, 2006, the petitioner invoked a ninety-six hour hold on Anthony. See General Statutes § 17a-101g. On March 24, 2006, the petitioner filed a motion for an order of temporary custody and a petition alleging that Anthony was a neglected child. On that same date, the court issued an ex parte order of temporary custody. The parents requested that Anthony be placed in the home of his paternal great-aunt and uncle. The department of children and families (department) honored that request, and on March 24, 2006, placed Anthony with those foster parents. On November 14, 2006, the court adjudicated Anthony a neglected child and committed him to the care and custody of the petitioner.

The department provided the respondent with numerous services to address her engaging in domestic violence and to improve her parenting skills and her ability to maintain employment and housing. In June, 2006, the parents were referred to Casey Family Services to participate in a reunification program. The respondent was unable to participate in the program because it was determined that she was not in a stable enough condition to benefit from the program. She was given a new date of September, 2006, for entering the program. In September, 2006, she still had not taken steps to stabilize herself so she could benefit from the program and, accordingly, was not accepted into it. In January, 2007, when she finally was accepted into the

reunification program, she did not cooperate with the program requirements and did not complete the program. In November, 2006, the respondent completed an anger management program through Catholic Charities. The department also referred her to a domestic violence program, the DOVE program, for which she was on a waiting list. The department additionally referred the respondent to Connecticut Works, for educational and employment services. She did not comply with that program. In addition to being arrested on March 22, 2006, the respondent was arrested on May 30, 2006, and again on April 5, 2007, as a result of additional instances of domestic violence.

On April 4, 2007, the acting commissioner filed a petition for the termination of parental rights. He sought the termination of the parental rights of both the respondent and the father. Thereafter, on April 18, 2007, the intervenor filed a motion to intervene, which was later granted by the court "for dispositional purposes only . . . ." The respondent thereafter filed a motion to revoke the commitment and to transfer guardianship of Anthony to the intervenor.

After a trial, the court issued a memorandum of decision in which it terminated the parental rights of both parents and denied the motion to transfer guardianship to the intervenor. The respondent and the intervenor thereafter filed separate appeals. Additional facts will be set forth as necessary.

I

AC 29399

The respondent appears to claim that the court improperly terminated her parental rights with respect to Anthony. She essentially argues that "everyone

changes" and that she ought to have a "second chance."[3] We affirm the judgment of the court.

"In order to terminate a parent's parental rights under [General Statutes] § 17a-112, the petitioner is required to prove, by clear and convincing evidence, that: (1) the department has made reasonable efforts to reunify the family . . . (2) termination is in the best interest of the child . . . and (3) there exists any one of the seven grounds for termination delineated in § 17a-112 (j) (3)." (Citations omitted; internal quotation marks omitted.) *In re Shaiesha O.*, 93 Conn. App. 42, 46–47, 887 A.2d 415 (2006).

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under § 17a-112 (j)] exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Internal quotation marks omitted.) *In re Anthony H.*, 104 Conn. App. 744, 756, 936 A.2d 638 (2007), cert. denied, 285 Conn. 920, 943 A.2d 1100 (2008).

"Our standard of review on appeal from a termination of parental rights is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the

---

[3] To the extent that the respondent attempts to raise new evidence on appeal, we cannot afford it consideration. "To do so would transform an appellate court into a second trial court, and this we cannot allow." *Wendt* v. *Wendt*, 59 Conn. App. 656, 678, 757 A.2d 1225, cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000).

evidence in the whole record, clearly erroneous. . . . On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Christian P.*, 98 Conn. App. 264, 268, 907 A.2d 1261 (2006).

The court's finding, by clear and convincing evidence, that the department had made reasonable efforts to reunite the respondent with Anthony, was not clearly erroneous. On March 31, and November 14, 2006, the court ordered specific steps to facilitate the return of the child to the respondent, which included parenting aid services, parenting classes, psychological evaluations, anger management, reunification service through Casey Family Services, education and vocational assistance through Connecticut Works and domestic violence counseling.

The court found that the respondent had failed to achieve such a degree of rehabilitation as would encourage the belief that within a reasonable time, she could assume a responsible position in Anthony's life. Our review of the record reveals that the evidence credited by the court supports this finding. The respondent failed to attend or to complete numerous treatment and counseling programs offered to her. She had been unable to make progress in improving her parenting skills, continued to be involved in domestic violence with the father, and failed to obtain stable housing and employment. The court's finding, by clear and convincing evidence, that the respondent failed to achieve sufficient personal rehabilitation was not clearly erroneous.

Having found by clear and convincing evidence that the respondent failed to achieve sufficient personal rehabilitation, the court then proceeded to the dispositional phase of the proceedings. The court found that Anthony's best interest would be served by granting the petition to terminate the respondent's parental rights. In support of that finding, the court noted that Anthony was removed from his parents' care when he was nine months old and was two and one-half years old at the time of trial; Anthony's foster parents were his psychological parents; Anthony's foster parents expressed a willingness to adopt Anthony; and the present lack of permanency and the negative effects on his life are not consistent with Anthony's best interest. On the basis of those facts, we conclude that the court's finding that termination was in the best interest of Anthony was not clearly erroneous.

## II

### AC 29400

### A

We next turn to the intervenor's appeal and first address the issue of standing because it presents a question of the trial court's subject matter jurisdiction. See *Castro* v. *Viera*, 207 Conn. 420, 429, 541 A.2d 1216 (1988) ("once the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case" [citations omitted; internal quotation marks omitted]).

"Review by way of appeal is governed in general by General Statutes § 52-263, which provides in relevant part: Upon the trial of all matters of fact in any cause or action in the Superior Court . . . if either party is aggrieved by the decision of the court or judge . . . he may appeal to the court having jurisdiction from the

final judgment of the court . . . . Further, Practice Book § 61-1 provides: An aggrieved party may appeal from a final judgment, except as otherwise provided by law. . . . Aggrievement, in essence, is appellate standing." (Internal quotation marks omitted.) *Marine Midland Bank* v. *Ahern*, 51 Conn. App. 790, 796–97, 724 A.2d 537 (1999), appeal dismissed, 252 Conn. 151, 745 A.2d 189 (2000).

"Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected. . . . We traditionally have applied the following two part test to determine whether aggrievement exists: (1) does the allegedly aggrieved party have a specific, personal and legal interest in the subject matter of a decision; and (2) has this interest been specially and injuriously affected by the decision. . . . Proof of aggrievement is, therefore, an essential prerequisite to the court's jurisdiction of the subject matter of the appeal." (Internal quotation marks omitted.) *Hunt* v. *Guimond*, 69 Conn. App. 711, 715, 796 A.2d 588 (2002).

In her brief, the petitioner contends that there may be an issue concerning the intervenor's standing on appeal. The petitioner notes that there is ambiguity in the record as to whether the intervenor intervened in the matter concerning the neglect petition, in the matter concerning the termination of parental rights or in both. The intervenor did not indicate in her motion to intervene that she specifically sought intervention in the matter concerning the neglect petition. The court's order granting intervention "for dispositional purposes only" does not clearly indicate the matter in which she intervened. Even if it were determined that the intervenor intervened in the matter concerning the neglect petition, that intervention alone does not establish aggrievement, the petitioner argues, because there is no record that the intervenor herself filed a motion

for transfer of guardianship or explicitly joined in the respondent's motion. The petitioner acknowledges, however, that it appears as if the court deemed the intervenor both to have intervened in the neglect petition aspect of the case and to have joined in, or adopted, the respondent's motion to transfer guardianship.

We conclude that on the facts in this case, the intervenor has standing to appeal from the denial of the motion to transfer guardianship in the neglect petition matter. In its order granting the intervenor's motion to intervene, the court granted intervenor status "for dispositional purposes only . . . ." Practice Book § 35a-4[4] permits intervention in the dispositional phase of the trial. "Disposition in a neglect petition may take one of a number of forms, including return to parents, return to parents with a protective order, foster care placement, or the initiation of proceedings to terminate parental rights." (Internal quotation marks omitted.) *In re Elisabeth H.*, 40 Conn. App. 216, 219, 669 A.2d 1246 (1996); see also General Statutes § 46b-129 (j).

In its memorandum of decision, the court apparently granted the intervenor's motion to intervene as to the neglect petition matter and considered the motion to transfer guardianship to be a request not only from the respondent but also from the intervenor. When analyzing the motion to transfer guardianship, the court concluded: "The *request* of the mother, father and *intervening maternal great-grandmother* to remove the child from his current home to the maternal great-grandmother's home is not in the child's best interest." (Emphasis added.)

---

[4] Practice Book (2007) § 35a-4 (b) provides: "Other persons including, but not limited to, siblings may move to intervene in the dispositional phase of the trial and the judicial authority may grant said motion if it determines that such intervention is in the best interest of the child or in the interests of justice."

The court, in its memorandum of decision, treated the motion to intervene as though it applied only to the neglect petition and deemed the intervenor, a self-represented litigant, to have joined in or adopted the respondent's motion to transfer guardianship from the foster parents to the intervenor. We can conclude that on the facts of this case, the intervenor is aggrieved by the court's denial of the motion to transfer guardianship, which was adverse to her interest in the disposition of the neglect petition and, thus, has standing to bring this appeal. See *In re Shanaira C.*, 105 Conn. App. 713, 717–19, 940 A.2d 817 (intervening former girlfriend of minor child's father had standing on appeal to challenge revocation and commitment of minor child where trial court's ruling revoking commitment was adverse to intervenor's interest in disposition of neglect petition), cert. granted on other grounds, 286 Conn. 917, 945 A.2d 977 (2008). "[I]n determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Lowe* v. *Shelton*, 83 Conn. App. 750, 754, 851 A.2d 1183, cert. denied, 271 Conn. 915, 859 A.2d 568 (2004).

B

The intervenor challenges the court's denial of the motion to revoke Anthony's commitment to the petitioner and to transfer guardianship of Anthony from his foster parents to the intervenor. She appears to argue that the court improperly failed to find that it was in the best interest of Anthony to have guardianship transferred to her. We disagree.

We begin with the standard of review. "To determine whether a custodial placement is in the best interest of the child, the court uses its broad discretion to choose a place that will foster the child's interest in sustained growth, development, well-being, and in the continuity

and stability of its environment. . . . We have stated that when making the determination of what is in the best interest of the child, [t]he authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did. . . . [G]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . [Appellate courts] are not in a position to second-guess the opinions of witnesses, professional or otherwise, nor the observations and conclusions of the [trial court] when they are based on reliable evidence." (Citations omitted; internal quotation marks omitted.) *In re Karl J.*, 110 Conn. App. 22, 26, 954 A.2d 231, cert. denied, 289 Conn. 954, 961 A.2d 420 (2008).

The court concluded that the request of the respondent, father and the intervenor to remove Anthony from his current home and to transfer guardianship to the intervenor was not in Anthony's best interest. The court reasoned that no evidence was presented that would warrant the disruption of Anthony's life from his current placement to a new placement. The court found that Anthony's foster parents were his psychological parents, with whom he had bonded and referred to as "Mommy" and "Daddy." The court apparently credited the testimony of Regina Wilson, a clinical psychologist, who testified that it would not be in Anthony's best

interest for him to move out of his current foster home to the home of another relative.

We conclude, on the basis of the evidence presented to the court, that the court reasonably concluded that it was in the best interest of Anthony to remain with his foster family and not to have guardianship transferred to the intervenor. Accordingly, the court did not abuse its discretion in denying the motion for transfer of guardianship.

The judgment is affirmed.

In this opinion the other judges concurred.