IN RE AVERIELLA P.*
(AC 35810)

Alvord, Bear and Harper, Js.

Argued October 15—officially released November 13, 2013**

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** November 13, 2013, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Dana M. Hrelic*, with whom were *Brendon P. Levesque* and, on the brief, *Lori Knuth*, for the appellant (respondent mother).

*Susan T. Pearlman*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Opinion*

BEAR, J. The respondent mother[1] appeals from the judgment of the trial court transferring guardianship of her daughter, Averiella P., from the petitioner, the Commissioner of Children and Families, to the child's maternal grandmother and maternal stepgrandfather (grandparents). On appeal, the respondent claims that the court used an improper standard, namely, potential risk of harm to the child, when determining whether it should grant the petitioner's motion to transfer guard-

---

[1] The respondent father has not joined in this appeal. Accordingly, we refer to the mother as the respondent.

ianship.[2] We disagree with the respondent's contention and, accordingly, affirm the judgment of the trial court.

Averiella has been in the legal custody of the petitioner since shortly after her birth in May, 2011, when the court entered an order of temporary custody in favor of the petitioner, who placed Averiella with her grandparents. Since that placement, Averiella has lived continuously with her grandparents for essentially her entire life. Initial specific steps were ordered for the respondent and Averiella's father at the time of the temporary custody hearing. On September 8, 2011, the court adjudicated Averiella neglected after the respondent and Averiella's father entered pleas of nolo contendere to the petitioner's allegation of neglect, which had been based on the ground that Averiella was permitted to live under conditions, circumstances or associations injurious to her well-being. In the dispositional part of the neglect proceeding, the court committed Averiella to the petitioner, who was designated as her statutory guardian until further order of the court, and it ordered amended specific steps for the parents at that time. On December 7, 2012, the petitioner filed a motion to modify the disposition from commitment to a transfer of guardianship to the grandparents.[3] On January 23, 2013, the respondent filed an objection to the motion to modify disposition to a transfer of guardianship and a motion for reunification. The court held a hearing on May 22, 2013, and rendered a judgment on May 28, 2013, granting the petitioner's motion and denying the respondent's motion. This appeal followed.[4]

On appeal, the respondent specifically claims: "The trial court improperly based the transfer of guardian-

[2] Counsel for Averiella filed a position letter with this court, stating that she supports the position of the petitioner on appeal.

[3] The grandparents are licensed foster care providers.

[4] The respondent has appealed only from the judgment granting the petitioner's motion to open and transfer guardianship. She has not appealed from the court's denial of her motion for reunification.

ship of the minor child to the maternal grandparents on the 'potential risk of harm' to the minor child stemming from prior injuries sustained over two years earlier by a different child." She argues that "[t]he 'potential risk of harm' is an improper standard upon which to base a finding that a transfer of guardianship is in a child's best interest," and, alternatively, "[t]he 'potential risk of harm' alone was insufficient to support the trial court's finding that a transfer of guardianship was in the child's best interest." We disagree with the respondent's contentions.

"To determine whether a custodial placement is in the best interest of the child, the court uses its broad discretion to choose a place that will foster the child's interest in sustained growth, development, well-being, and in the continuity and stability of its environment. . . . We have stated that when making the determination of what is in the best interest of the child, [t]he authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did. . . . [G]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . [Appellate courts] are not in a position to second-guess the opinions of witnesses, professional or otherwise, nor the observations and conclusions of the [trial court] when they are based on reliable evidence." (Internal quotation marks omitted.) *In re Anthony A.*, 112 Conn. App. 643, 653–54, 963 A.2d 1057 (2009); see General Statutes § 46b-129 (j); see also Practice Book § 35a-12A.

Practice Book § 35a-12A provides in relevant part: "(a) Motions to transfer guardianship are dispositional in nature, based on the prior adjudication.

"(b) In cases in which a motion for transfer of guardianship seeks to vest guardianship of a child or youth

in any relative who is the licensed foster parent for such child or youth, or who is, pursuant to an order of the court, the temporary custodian of the child or youth at the time of the motion, the moving party has the burden of proof that the proposed guardian is suitable and worthy and that transfer of guardianship is in the best interests of the child. In such cases, there shall be a rebuttable presumption that the award of legal guardianship to that relative shall be in the best interests of the child or youth and that such relative is a suitable and worthy person to assume legal guardianship. The presumption may be rebutted by a preponderance of the evidence that an award of legal guardianship to such relative would not be in the child's or youth's best interests and such relative is not a suitable and worthy person. . . ."

In the present case, the respondent focuses on the court's statement during the hearing that "[t]he issue for the parents here [is] the unexplained injuries to [the other child]. Understand that the law permits adjudication of neglect based on a potential risk of harm, not just actual harm . . . ." Although the respondent is correct that the court made such a statement regarding the basis for the *adjudication of neglect*, "[m]otions to transfer guardianship are dispositional in nature, based on the prior adjudication." Practice Book § 35a-12A (a). Furthermore, even if the court considered the potential risk of harm to Averiella as *one of the important factors* in its determination of her best interest, because it concerned her safety and well-being, the court did not err in doing so. See, e.g., General Statutes § 46b-129 (b) (child's best interest includes his or her safety); *In re Shyina B.*, 58 Conn. App. 159, 167, 752 A.2d 1139 (2000) (child's best interest includes her interest in sustained growth, development, well-being, and continuity and stability of her environment).

In this case, the court also very clearly stated that "while the interests of all others may be considered in making a decision about the child, it is the best interest of the child that controls the decision." The court found that Averiella had lived with her grandparents since shortly after she was born, that she "has thrived in that environment" and that the grandparents were "open to visits with the parents." The court also stated that it

had "reviewed the evidence submitted by all counsel and listened to the testimony presented at [the] hearing . . . ." It concluded by finding that "the transfer of guardianship to [the grandparents] is in the best interest of Averiella . . . [and that the grandparents] are suitable and worthy caretakers." As our Supreme Court previously has stated: "[I]f it is not otherwise clear from the record that an improper standard was applied, the appellant's claim will fail on the basis of inadequate support in the record." (Internal quotation marks omitted.) *In re Jason R.*, 306 Conn. 438, 453, 51 A.3d 334 (2012). In this case, there is no support in the record for the respondent's contention that the court used "potential risk of harm" as the sole basis for its finding that a transfer of guardianship was in Averiella's best interest.[5]

We conclude, therefore, that the court properly applied the standard required by Practice Book § 35a-12A and General Statutes § 46b-129 (j).[6]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] Additionally, the respondent did not offer proof sufficient to overcome by a preponderance of the evidence the rebuttable presumption that the award of legal guardianship to the grandparents was in the best interests of Averiella and that they were suitable and worthy persons to assume legal guardianship. See Practice Book § 35a-12A (b).

[6] Following the release of our opinion, the respondent filed, inter alia, a motion for reconsideration contending in relevant part that Practice Book § 35a-12A was not applicable to this case, but that Practice Book § 35a-16 applied. We have reconsidered our ruling and determined that the outcome of this appeal would be the same under either Practice Book section.

Practice Book § 35a-12A became effective on January 1, 2012, and, originally, was recommended to the Child Protection Subcommittee of the Juvenile Task Force as a new Practice Book § 35a-16A. See Minutes, Meeting of Child Protection Subcommittee of the Juvenile Task Force (September 27, 2010), available at http://jud.ct.gov/Committees/juv/juv_minutes_CP_092710.pdf (last visited December 16, 2013). Instead, the subcommittee decided to move the recommended provision to § 35a-12A. Id. Motions under both §§ 35a-12A and 35a-16 are "dispositional in nature," based on the prior adjudication. See Practice Book §§ 35a-12A (a) and 35a-16.

Practice Book § 35a-16 concerns motions to modify dispositions, including by way of a transfer of guardianship, and § 35a-12A concerns motions to transfer guardianship. In the child protection context, however, after a child has been committed to the custody and guardianship of the commissioner, as in this case, the court could not transfer guardianship from the commissioner to a third party without modifying the original disposition. Because we conclude in this case that the outcome of the appeal would be the same under either provision, we need not analyze at this time the exact interplay between these two sections of the rules of practice. There is no doubt that General Statutes § 46b-129 (j) governed this case, and we already have concluded that the court properly applied that statute.