******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

IN RE ATHENA C.*
(AC 40809)

Keller, Bright and Norcott, Js.

*Syllabus*

The respondent father appealed to this court from the judgment of the trial court terminating his parental rights with respect to his minor daughter, A. *Held*:

1. The respondent father could not prevail on his claim that the trial court improperly determined that the termination of his parental rights was in the best interest of A based on its comparison of the relationship that A's foster parents had with A and the stability of their home with that of A's biological parents: the trial court, which first found by clear and convincing evidence that the adjudicative ground for termination was met before making its dispositional finding, was statutorily required in the dispositional phase to consider A's bond with her foster parents because of the extended time she had spent in their care, and it made no reference to the relative comfort of A's putative home, nor did it compare the parenting abilities or level of care received by A from the father and the foster parents; moreover, the trial court did not improperly make a determination as to a permanent placement for A but, instead, left the issue as to the appropriate custodian or adoptive parent to be resolved at a later date, the court's decision terminating the father's parental rights was based on a consideration of the statutory (§ 17a-112 [k]) factors, and the court did nothing more than what it was statutorily required to do by noting the bond between A and her foster parents.

2. The trial court did not abuse its discretion in declining to transfer guardianship of A to her maternal grandmother as an alternative to terminating the respondent father's parental rights; even though a review of the record revealed that A had a close bond with her grandmother, the trial court also had evidence before it that A was emotionally attached to her foster parents such that she regarded them as her psychological parents and that removing A from their care might have posed a serious health risk to her, and the court did not ignore A's close relationship with her grandmother or certain past deficiencies of the foster parents but, rather, considered all the evidence, and it properly relied on the relationship between A and her foster parents to decide whether immediately transferring guardianship to A's grandmother would be in A's best interest.

Argued January 29—officially released April 30, 2018**

*Procedural History*

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor child, brought to the Superior Court in the judicial district of New Britain, Juvenile Matters, and tried to the court, *Hon. Henry S. Cohn*, judge trial referee; judgment terminating the respondents' parental rights, from which the respondent father appealed to this court; thereafter, the court issued an articulation of its decision. *Affirmed.*

*David J. Reich*, for the appellant (respondent father).

*John E. Tucker*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Opinion*

NORCOTT, J. The respondent father appeals from the judgment of the trial court terminating his parental rights with respect to his minor child, Athena C. The respondent claims that the trial court improperly (1) determined that the termination of his parental rights was in the child's best interest; and (2) denied his motion to transfer guardianship of the child to the child's maternal grandmother (grandmother).[1] We affirm the judgment of the trial court.

The following relevant facts were found by the court or are otherwise undisputed. On October 30, 2015, the petitioner, the Commissioner of Children and Families (petitioner), filed coterminous petitions of neglect and termination of the respondent's and the mother's parental rights to their child.[2] Subsequently, the petitioner also filed a motion to review and approve the permanency plan of termination of parental rights and adoption. By way of background, the Department of Children and Families (department) became involved with the family due to incidents of domestic violence and the mother's serious recurrent substance abuse. The department had twice obtained temporary custody of the child and placed her with her current foster parents. On both occasions, the grandmother declined to take care of the child due to age and health issues. At the time of the second placement, the child already was staying with the foster parents under an informal arrangement and the grandmother suggested to the department that the child remain in their care. At the time of disposition, the child was four years old and had been living with the foster parents for more than two years.

On July 19, 2016, the mother filed a motion for transfer of guardianship of the child to the grandmother, which was adopted by the respondent. The mother then sought to consolidate this motion with the coterminous petitions. Thereafter, the trial court consolidated the above matters and heard argument over the course of a five day trial. The court heard testimony from various witnesses, including the grandmother, the foster mother, the court-appointed psychologist, Derek Franklin, and an independent psychologist, Bruce Freedman, who had been retained by the mother. On July 25, 2017, the court, *Hon. Henry S. Cohn*, judge trial referee, in an oral decision, adjudicated the child neglected on the ground that she had been denied proper care and attention and permitted to live under conditions injurious to her well-being. In the same decision, the court terminated the parental rights of the respondent and the mother on the ground that they had failed to rehabilitate within a reasonable time, and denied the mother's motion to transfer guardianship. This appeal followed.

After hearing argument, this court, sua sponte, issued

an order for articulation and supplemental briefing. Specifically, we ordered the court to "please articulate what other facts [it] found, besides the existence of the bond between the child and her foster parents, to support its determination that termination of parental rights was in the child's best interest and its denial of the motion to transfer guardianship to the maternal grandmother." The trial court thereafter filed an articulation with this court, which states in relevant part: "In determining that terminating the respondent parents' parental rights is in [the child's] best interest, the court has considered various factors, including her interest in sustained growth, development, well-being, and in the continuity and stability of her environment . . . her age and needs; the length and nature of her stay in foster care; the contact and lack thereof that she has had with her father and mother; the potential benefit or detriment of her retaining a connection with her biological parents; [and] her genetic bond to each birth parent . . . and the seven statutory factors and the court's finding thereon. The court has also balanced [the] child's intrinsic need for stability and permanency against the potential benefit of maintaining a connection with her biological parents. . . . In consideration of all these factors and after weighing all of the evidence, the court found that clear and convincing evidence established that it was in the best interests of [the] child to terminate the parental rights of both respondent parents." (Citations omitted; internal quotation marks omitted.) In light of the trial court's articulation, the parties provided supplemental briefing. Additional facts will be set forth as necessary.

I

The respondent first claims that the trial court improperly determined that the termination of his parental rights was in the best interest of the child. Specifically, the respondent argues that the court, in basing its dispositional finding on the child's bond with the foster parents and the extended duration for which she had lived with them, essentially engaged in an improper comparison of the "foster parents' relationship with the child and the stability of their home with that of the biological parents." In making this argument, the respondent relies on *In re Paul M.*, 154 Conn. App. 488, 107 A.3d 552 (2014), where this court observed that it is "improper for a termination of parental rights to be grounded on a finding that a child's prospective foster or adoptive home will be 'better' than life with one or more biological parent." Id., 505. The respondent acknowledges that our observation in *In re Paul M.* addresses a comparison of material advantages between the homes of foster and biological parents. He argues, however, that the trial court's reasoning amounted to a comparison of "relative abilities to care for the child" and that "[s]uch a comparison is just as damaging as comparing material advantage because it

would also tend to prejudice the court to look at the advantages of the adoptive placement rather than the statutory grounds."

In his supplemental brief, the respondent also argues that the "statutory finding regarding the positive bond that the child has with the foster parents should . . . not be used to support a termination." Rather, it "should only be used as a factor in finding that it would not be in the child's best interest to terminate . . . parental rights." (Emphasis omitted.) Finally, the respondent argues that the court's reliance on the child's bond with the foster parents constituted an improper consideration, at the dispositional phase of the termination proceeding, of where the child should reside posttermination.[3]

We disagree that the trial court's consideration of the child's bond with the foster parents was improper, or that it led to an improper determination of where the child would reside. We also disagree with the respondent's theory of how the best interest standard should be applied.

"We begin with the applicable standard of review and general governing principles. Although the trial court's subordinate factual findings are reviewable only for clear error, the court's ultimate conclusion that a ground for termination of parental rights has been proven presents a question of evidentiary sufficiency. . . . That conclusion is drawn from both the court's factual findings and its weighing of the facts in considering whether the statutory ground has been satisfied. . . . On review, we must determine whether the trial court could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify its [ultimate conclusion]. . . . When applying this standard, we construe the evidence in a manner most favorable to sustaining the judgment of the trial court." (Citations omitted; internal quotation marks omitted.) *In re Egypt E.*, 327 Conn. 506, 525–26, 175 A.3d 21 (2018).

"[A] hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights . . . exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. . . . In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the [parent's] parental rights is not in the best interests of the child. In arriving at that decision, the court is mandated to consider and make written findings regarding seven factors delineated in . . . § [17a-112 (k)]."[4]

(Internal quotation marks omitted.) *In re Joseph M.*, 158 Conn. App. 849, 858–59, 120 A.3d 1271 (2015).

"In the dispositional phase of a termination of parental rights hearing, the emphasis appropriately shifts from the conduct of the parent to the best interest of the child. . . . It is well settled that we will overturn the trial court's decision that the termination of parental rights is in the best interest of the [child] only if the court's findings are clearly erroneous. . . . The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of [his or her] environment. . . . In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in [§ 17a-112 (k)]. . . . The seven factors serve simply as guidelines for the court and are not statutory prerequisites that need to be proven before termination can be ordered. . . . There is no requirement that each factor be proven by clear and convincing evidence." (Footnote omitted; internal quotation marks omitted.) Id., 868–69.

The respondent argues that the trial court's reasoning amounted to the type of comparison that was proscribed by *In re Paul M.* In that case, the respondent challenged the trial court's termination of parental rights on the basis of the following language from its decision: "[T]he testimony of the social workers regarding their observations of the adjustment of [the child] to the foster home, the level of care he receives and the devotion of the foster parents to him *satisfy the court that remaining in his present placement is the best possible outcome and accordingly in the best interest of the child*"; and "[t]he child has adjusted very well in his foster home and to the extended foster family. This family is providing the day-to-day physical, emotional, moral and educational support the child needs. *The foster parents are committed to the child and would like to adopt him.*" (Emphasis in original; internal quotation marks omitted.) *In re Paul M.*, supra, 154 Conn. App. 503. On appeal, this court concluded that the trial court had "improperly overstated the importance of the perceived relative advantage of the putative adoptive home, and those findings were made erroneously." Id., 505–506. We held, however, that the court's remaining findings were entirely appropriate and supported its ultimate conclusion. Id., 506. The respondent asserts that the trial court's decision in the present case, unlike *In re Paul M.*, is primarily based on the child's bond with the foster parents and, therefore, is deficient.[5] We are not persuaded.

As a factual matter, we disagree with the respondent

that the trial court, in terminating his parental rights, relied principally on the child's bond with the foster parents. The court first found that the petitioner had proven the adjudicative ground by clear and convincing evidence; a finding not challenged by the respondent.[6] In the dispositional phase, the court, while issuing an oral decision, not only noted the child's strong emotional bond with the foster parents, but also considered her emotional ties to the respondent. The court then considered the unlikelihood of the respondent's rehabilitation within a reasonable time and the urgent need for permanence and stability for the child. After briefly considering the issue of the transfer of guardianship, the court then concluded its finding as to the termination of parental rights as follows: "*I'm considering the child's sense of time . . . or her need for a secure and permanent environment.* The relationship . . . the child has with the foster parents, *the totality of the circumstances*, that the termination of parental rights is in the child's best interest." (Emphasis added.)

In its subsequent articulation, the court stated that it had considered the seven statutory factors of § 17a-112 (k), as well as the child's "interest in sustained growth, development, well-being" and "continuity and stability of her environment . . . her age and needs; the length and nature of her stay in foster care; the contact and lack thereof that she has had with her father and mother; the potential benefit or detriment of her retaining a connection with her biological parents; [and] her genetic bond to each birth parent." (Citation omitted; internal quotation marks omitted.) The court also stated that it had "balanced [the] child's intrinsic need for stability and permanency against the potential benefit of maintaining a connection with her biological parents."

In light of the trial court's reasoning, we are not persuaded by the respondent's argument that this case is deficient in a manner that *In re Paul M.* was not. In fact, this case is similar to *In re Paul M.*, in that here, as there, the trial court first found by clear and convincing evidence that the adjudicative ground for termination was met before making its dispositional finding. *In re Paul M.*, supra, 154 Conn. App. 506. In both cases the trial court was statutorily required, in the dispositional phase, to consider the children's bond with their foster parents because of the extended time the children had spent in their care. See id. Unlike *In re Paul M.*, however, the trial court in the present case made no reference to the relative comfort of the child's putative home, nor did it compare the level of care received by the child from the respondent and the foster parents. See id., 503 ("[t]he testimony of the social workers regarding their observations of the adjustment of [the child] *to the foster home, the level of care he receives and the devotion of the foster parents to him* satisfy the court that remaining in his present placement is the best

possible outcome and accordingly in the best interest of the child" [emphasis altered; internal quotation marks omitted]).[7]

The respondent contends, however, that a comparison of the child's emotional ties with the respondent and her bond with the foster parents essentially amounts to a comparison of their parenting abilities. In *In re Joseph M.*, supra, 158 Conn. App. 871, this court rejected a similar argument. The respondent in that case claimed that the trial court impermissibly had compared the parenting abilities of the foster and biological parents by basing its decision to terminate his parental rights on the child's emotional ties with the foster parents. Id., 867–69. Specifically, the respondent in that case took issue with the following excerpt from the trial court's memorandum of decision: "Based on all the foregoing, the court by clear and convincing evidence finds termination of the parental rights of the mother and [the respondent] as to [the child] is in the best interest of such child. The court concludes that subjecting [the child] to a removal from the foster family *with whom he has bonded and with whom he can attain permanency through adoption* would not be in his best interest given the circumstances of this case." (Emphasis in original; internal quotation marks omitted.) Id., 868 n.19.

In rejecting the respondent's claim, in that case, that the trial court had engaged in an improper comparison, we observed that the court was required, under § 17a-112 (k), to consider the three year old child's bond with the foster family because he had spent all but one month of his life with them. Id., 871. We concluded that in considering this bond, the court did not determine that the foster home was "better," rather, the court had found that the foster home "in general, provided for the child's needs, including emotional needs for love and stability." Id.

Similarly in the present case, the child was four years old at the time the trial court issued its decision and had spent more than two years in the care of the foster parents. As in *In re Joseph M.*, therefore, the court, in the present case, was statutorily required to consider the child's emotional ties with the foster parents. In light of the court's reasoning for terminating the respondent's parental rights, and after carefully reviewing the record, we are persuaded that here, as in *In re Joseph M.*, there was no comparison of the parties' parenting abilities.

We also are unpersuaded by the respondent's argument that the court improperly considered the child's placement in the dispositional phase of the termination proceeding. Specifically, the respondent's reliance on *In re Denzel A.*, 53 Conn. App. 827, 733 A.2d 298 (1999), and *In re Sheena I.*, 63 Conn. App. 713, 778 A.2d 997 (2001), in support of this argument is misplaced. The

respondent correctly asserts that this court reiterated in *In re Denzel A.* and *In re Sheena I.*, that "[i]n the dispositional phase of a termination proceeding, the court properly considers only whether the parent's parental rights should be terminated, not where or with whom a child should reside following termination." *In re Sheena I.*, supra, 726; see also *In re Denzel A.*, supra, 834. In both those cases, however, this court declined to consider the transfer of guardianship to the proponent of such transfer *in lieu* of termination of parental rights. Instead, we held that such a determination should, in certain circumstances, wait until after the parents' rights were terminated. See *In re Denzel A.*, supra, 835.

Consistent with these holdings, the trial court here did not make a determination as to a permanent placement for the child during the dispositional phase. Instead, it left the issue as to the appropriate custodian or adoptive parent to be resolved at a later date through the department's interactions with the interested parties: "[T]he better way to go would be a termination of parental rights and let . . . the [department], which is going to become the statutory parent, take on a role of [mediator] in bringing these people together." Furthermore, the court's articulation makes clear that the court's decision terminating the respondent's parental rights was based on a consideration of the statutorily required factors. The court explained that although it noted the child's bond with the foster parents, it considered the seven best interest factors in § 17a-112 (k). The court further noted that its decision was based on the fact that "the [respondent] had severe and long-standing substance abuse, domestic violence, [and] mental health issues and a long history of engaging in criminal conduct, including attempting to strangle the mother on two separate occasions. The court-appointed psychologist concluded that the best interest of the child required granting the [petition to terminate parental rights], as the parents had virtually no possibility of playing a constructive role in the child's life."[8] Thus, the court did not improperly consider placement of the child with the foster parents when it determined that it was in the child's best interest to terminate the respondent's parental rights.

Finally, the respondent's argument that the emotional bond between the child and the foster parents should be used only to determine whether it would *not* be in the best interest of the child to terminate parental rights is a misstatement of the law. There is simply nothing in the language of § 17a-112 (k) that supports such an interpretation. Subsection (4) identifies several people for and with whom the child might have "feelings and emotional ties." The statute requires the court to consider and make findings as to all such persons. In doing so, it does not distinguish or limit what use the court is to make of such information in determining whether

termination is in the best interest of the child. The respondent's argument would require us to limit the court's consideration of the child's feelings and emotional ties to any person who has exercised physical care, custody or control of a child for at least one year to the lack of such feelings and emotional ties. Not only is this illogical, it is flatly inconsistent with the plain language of subsection (4), which describes such persons as those "with whom the child has developed significant emotional ties . . . ." General Statutes § 17a-112 (k) (4). By noting the bond between the child and foster parents in this case, the court did no more than what it was statutorily required to do.

## II

The respondent next argues that the trial court erred in declining to transfer guardianship of the child as an alternative to terminating the respondent's parental rights. Specifically, the respondent argues that the grandmother had an "extremely close bond" with the child, and the foster parents could not provide a stable home for the child. In light of these facts, the respondent contends that the trial court should, in the best interest of the child, have transferred guardianship to the grandmother. We disagree.

"To determine whether a custodial placement is in the best interest of the child, the court uses its broad discretion to choose a place that will foster the child's interest in sustained growth, development, well-being, and in the continuity and stability of its environment. . . . We have stated that when making the determination of what is in the best interest of the child, [t]he authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did. . . . [G]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . [Appellate courts] are not in a position to second-guess the opinions of witnesses, professional or otherwise, nor the observations and conclusions of the [trial court] when they are based on reliable evidence." (Internal quotation marks omitted.) *In re Anthony A.*, 112 Conn. App. 643, 653–54, 963 A.2d 1057 (2009).

Our review of the record reveals that the child, indeed, has a close bond with the grandmother. In fact, the trial court, in issuing its ruling from the bench, noted that "[t]here's no question that the child is bonded

with the grandmother." The trial court also, however, had evidence before it that the child was emotionally attached to the foster parents such that she regards them as her parents and refers to them as "Mommy" and "Daddy." The court-appointed psychologist, Derek Franklin, testified that the foster parents essentially are the child's "psychological parents." He testified further that removing the child from the care of the foster parents might pose a serious health risk for her.

On the other hand, the psychologist retained by the mother, Bruce Freedman, based on his observation of the interaction between the child and the grandmother, testified that they had a close bond. Not having had the chance to observe a similar interaction between the child and the foster parents, Freedman assumed a healthy relationship between them. He concluded, however, that ideally the child should maintain a relationship with the foster parents as well as the grandmother. He opined further that an arrangement where the child was permanently placed with the foster parents would work just as well, as long as the child maintained a relationship with the grandmother.

In its articulation, the trial court summarized the evidence before it as follows: "The child had lived the majority of her life with the preadoptive foster parents. The foster father had some financial difficulties and minor criminal charges that had been resolved several years previous. . . . The mother had recruited the foster mother from time to time for placement. . . . The grandmother had declined twice to take custody of the child, due to her age and health. . . . The court-appointed psychologist deemed the foster parents 'psychological parents' . . . [and] [r]emoval of the child would put the child at risk for behavioral or emotional problems." Finally, the trial court noted in relation to the mother's expert that the "best solution for [him] would be a shared care arrangement."

In light of this evidence, the trial court essentially had to decide whether an immediate removal of the child from the foster parents' care to the grandmother's care was in the best interest of the child. After observing, in its oral decision, the child's bond with the grandmother, the court stated: "[T]he better way to go would be a termination of parental rights and let . . . the [department], which is going to become the statutory parent, take on a role of mediation in bringing these people together. And I think in this family, which—very close family where people are always having parties and working things out, that the transfer of guardianship is going to be denied and let's see if we can't get [the] grandmother and [the foster parents] together. I think [the foster parents]—I should comment on the fact that [the foster parents] had some financial difficulties. There were four instances of some kind of money problems. There was a—or a fight, disorderly conduct, but

these were about ten years ago and they don't seem to have occurred again."

It is clear from the court's reasoning that it neither ignored the child's close relationship with the grandmother, nor certain past deficiencies of the foster parents. Rather, the court considered all the evidence before it to decide whether immediately transferring guardianship to the grandmother would be in the best interest of the child. We will not, on appeal, second-guess the court's determination that it was not. See *In re Averiella P.*, 146 Conn. App. 800, 803, 81 A.3d 272 (2013) ("[appellate courts] are not in a position to second-guess the opinions of witnesses, professional or otherwise, nor the observations and conclusions of the [trial court] when they are based on reliable evidence" [internal quotation marks omitted]); see also *In re Anthony A.*, supra, 112 Conn. App. 654 (same).

In addition, this court previously has held that a trial court may rely on the relationship between a child and the child's foster parents to determine whether a different placement would be in the child's best interest. In *In re Anthony A.*, supra, 112 Conn. App. 653, the intervenor grandmother claimed that the trial court improperly had concluded that it was not in the child's best interest to transfer guardianship to her when the child had been placed with the foster parents for some time. In rejecting the grandmother's claim, we concluded that the trial court properly considered the child's close relationship with the foster parents, with whom he had bonded and referred to as "Mommy" and "Daddy," their status as the child's psychological parents, and a clinical psychologist's testimony that it would not be in the best interest of the child to be removed from their care. (Internal quotation marks omitted.) Id., 654–55. We held that the trial court reasonably concluded that it was in the child's best interest to remain with the foster family. Id., 655. Likewise, in the present case, we conclude that the trial court did not abuse its discretion in declining to transfer guardianship of the child to the grandmother.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** April 30, 2018, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] At trial, the father did not file his own motion for transfer of guardianship to the grandmother but adopted the mother's motion. The father is the sole appellant in this case. We will therefore refer to the father as the respondent throughout this opinion.

[2] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court, upon notice and hearing as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child

with the parent in accordance with subsection (a) of section 17a-111b, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts, except that such finding is not required if the court has determined at a hearing pursuant to section 17a-111b, or determines at trial on the petition, that such efforts are not required, (2) termination is in the best interest of the child, and (3) (A) the child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected, abused or uncared for in a prior proceeding, or (ii) is found to be neglected, abused or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

The petition alleged, as adjudicative grounds for termination, (1) abandonment, (2) failure to rehabilitate, and (3) the absence of an ongoing parent-child or youth relationship with the respondent. The court adjudicated the child neglected on the ground that she was denied proper care and attention and that she was being permitted to live under conditions injurious to her well-being. Thereafter, the court terminated the parental rights of the mother and the respondent on the ground that they had failed to rehabilitate within the meaning of § 17a-112 (j) (3) (B) (ii).

[3] The respondent also argues that even though the trial court listed additional factors in its articulation that had guided its decision to terminate the respondent's parental rights, these factors do not cure the prejudice resulting from the court's original decision. Because we conclude that the trial court's original decision was proper, we need not reach this argument.

[4] General Statutes § 17a-112 (k) provides: "Except in the case where termination of parental rights is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption and Safe Families Act of 1997, as amended from time to time; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to the child's parents, any guardian of such child's person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

[5] In particular, the respondent points to the following language from the court's oral decision to suggest that the court primarily relied on the child's bond with the foster parents: "So as regards to the termination of parental rights, I have to look at the . . . best interest finding and I'm going to find by clear and convincing evidence based on the fact that the foster parents have a bond and the child has been living there off and on for close to two and a half years."

[6] Before considering whether termination of the respondent's parental rights was in the child's best interest, the court first found, as it must, that the petitioner had proven the adjudicative ground by clear and convincing evidence. At oral argument before this court, the respondent's counsel

acknowledged that he is not challenging the trial court's adjudicative finding and that his claim that the court principally relied on the child's bond with the foster parents goes to the dispositional phase only.

[7] By comparison, the trial court in the present case referenced the care provided to the child by the foster parents as follows: "The child has strong emotional ties with the foster family that provide the physical, emotional, [and] education support of this child. The child [has] little or no positive emotional ties with [the] mother, [she] does to the father. There's no question that [there are] emotional ties to the father."

[8] A trial court should consider that a transfer of guardianship absent a termination of parental rights, as opposed to a permanent guardianship, can lead to continued efforts on the part of a parent to seek to regain custody. See Practice Book § 35a-20 (motion for reinstatement of guardianship). This may have a disruptive effect on the child's need for stability.

––––––––––––––––––––––––––––