# IN RE A.R. ET AL.*
## (AC 31629)

Gruendel, Beach and West, Js.

Argued May 25—officially released August 17, 2010

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Inez M. Diaz Galloza,* for the appellant (intervening respondent).

*Stephen G. Vitelli,* assistant attorney general, for the appellee (petitioner).

*Stephen J. Varga,* for the appellee (respondent father of A.R.).

*John J. Ghidini III,* for the minor children.

*Opinion*

BEACH, J. The intervening respondent (intervenor), the maternal great-grandmother of A and M, minor children in the custody of the commissioner of children and families (commissioner), appeals from the judgment of the trial court dismissing her motion to transfer guardianship. Because we conclude that the court incorrectly treated the intervenor's motion to transfer guardianship as a motion to revoke commitment and determined that an intervening party may not file a motion to revoke commitment, we reverse the judgment of the trial court dismissing the intervenor's motion.

The following procedural history is relevant to the intervenor's appeal. A and M were cared for by the intervenor while their biological mother was incarcerated. On August 14, 2008, the commissioner filed an ex parte motion for an order of temporary custody and a neglect petition to remove A and M from the intervenor's care. The court, *Baldwin, J.,* granted the motion for an order of temporary custody and placed the children in the custody of the commissioner. The intervenor filed a motion to intervene, which the court, *Gleeson,*

*J.*, granted. The intervenor also filed a motion to transfer guardianship to herself. The court, *Harleston, J.*, consolidated the neglect trial with the respondent mother's motion to transfer guardianship to the intervenor, filed December 3, 2008. Trial commenced on February 2, 2009, on, inter alia, the motions to transfer guardianship and the neglect petition. After an evidentiary hearing, the court, *Olear, J.*, denied the motions to transfer guardianship to the intervenor, adjudicated A and M neglected and committed them to the care and custody of the commissioner. On June 15, 2009, the commissioner filed termination of parental rights petitions as to both children. The intervenor filed another motion to intervene with respect to the petitions to terminate parental rights, and Judge Gleeson granted that motion. On August 18, 2009, the intervenor filed a motion to transfer guardianship of the children to herself, which motion is the subject of this appeal. On October 8, 2009, Judge Gleeson, sua sponte, dismissed the intervenor's motion to transfer guardianship, holding that a motion to transfer guardianship of a child "committed by the court to the care, custody and guardianship of the [commissioner]" should be deemed a motion to revoke commitment and that, pursuant to General Statutes § 46b-129 (m), an intervening party is not permitted to file a motion to revoke commitment. This appeal followed.[1]

The intervenor claims on appeal that the court incorrectly treated her motion to transfer guardianship as a motion to revoke commitment. She argues that the language of § 46b-129 (j) treats motions to transfer guardianship as separate and distinct from motions to revoke commitment. In addition, she argues that Practice Book § 35a-16 indicates that only motions to modify that request that the custody of the child revert to the

---

[1] The intervenor filed a brief and orally argued the appeal. The commissioner and the attorney for the children chose not to file briefs, and attended but did not participate in oral argument.

custody of the parent are to be construed as motions to revoke commitment. She further argues that Practice Book § 35a-20 permits any party, including an intervenor, to file a motion to transfer guardianship. We agree.

As a preliminary matter, we set forth the applicable standard of review. "[I]ssues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Cruz* v. *Montanez*, 294 Conn. 357, 367, 984 A.2d 705 (2009). "The interpretive construction of the rules of practice is to be governed by the same principles as those regulating statutory interpretation." *Commissioner of Social Services* v. *Smith*, 265 Conn. 723, 733–34, 830 A.2d 228 (2003).

The statutory scheme regarding proceedings following a judicial finding of neglect or abandonment is clear and unambiguous. As stated in § 46b-129 (j),[2] the court

[2] General Statutes § 46b-129 (j) provides in relevant part: "Upon finding and adjudging that any child or youth is uncared-for, neglected or dependent, the court may commit such child or youth to the Commissioner of Children and Families. Such commitment shall remain in effect until further order

may commit a child, previously found to be uncared for, neglected or dependent, to the commissioner.[3] The commitment is to remain in effect until "further order . . . ." General Statutes § 46b-129 (j). Such "further order" may include a revocation of commitment, in which case custody would return to the parent, a termination of parental rights, or a transfer of "care and personal custody" to another agency or to any person "found to be suitable and worthy . . . ." General Statutes § 46b-129 (j). There are, then, at least four statutory options, not immutable, after commitment to the commissioner: (1) continuation of such commitment, (2) revocation of commitment, (3) termination of parental rights and (4) transfer of custody to another.

Section 46b-129 (j) does not expressly state who may file a motion to transfer custody. The rules of practice, however, plainly state that "[a] parent, legal guardian or *other interested party* seeking guardianship of the child or youth after guardianship rights to that child or youth were transferred to another person by the superior court for juvenile matters may file a motion with the court that ordered the transfer of guardianship." (Emphasis added.) Practice Book § 35a-20 (b).[4] A

of the court, except that such commitment may be revoked or parental rights terminated at any time by the court, or the court may vest such child's or youth's care and personal custody in any private or public agency that is permitted by law to care for neglected, uncared-for or dependent children or youths or with any person or persons found to be suitable and worthy of such responsibility by the court. . . ."

[3] The court has the option of not committing the child to the commissioner even after a finding of neglect. The court may also place the child with the parent, while the commissioner maintains "protective supervision . . . ." General Statutes § 46b-129 (j).

[4] Practice Book § 35a-16, on the other hand, provides that a motion for modification to return a child to the custody of the parent without protective supervision shall be treated as a motion for revocation of commitment. We note that no argument was made in this case that because the original transfer of custody to the commissioner was a transfer from the custody of the intervenor, the intervenor's motion should be treated as a motion to revoke commitment.

motion to modify the original order committing the child to the commissioner is dispositional, of course, following the adjudicative finding of neglect or abandonment.

There is no claim that the intervenor is not an interested party, and the statutory scheme does not prohibit the intervenor from filing a motion to modify the disposition.[5] A motion to transfer guardianship to herself is an appropriate way for the intervenor to request consideration as a potential guardian for the children.[6] Accordingly, the court erred in dismissing her motion.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.

---

[5] The court concluded that the intervenor was barred from filing a motion to modify because the nonparent intervenor would have a less rigorous burden than a parent pursuing a motion to revoke commitment; see General Statutes § 46b-129 (m) (requiring parents to prove cause for commitment no longer exists prior to court's consideration of whether such revocation is in best interest of child). In the statutory scheme, however, the child previously would have been found to have been neglected by a preponderance of the evidence in the adjudicatory phase. See Practice Book § 32a-3 (a). The court also held that, pursuant to § 46b-129 (m), only the commissioner, a parent or the child's attorney may file a motion to revoke the commitment. The intervenor, then, was without a means to pursue a transfer of guardianship to herself.

[6] Although the following cases are not dispositive of the issue, it should be noted that this court has heard cases in which intervening relatives have filed motions to transfer guardianship to themselves and that those cases have been decided on their merits. See In re Anthony A., 112 Conn. App. 643, 963 A.2d 1057 (2009); In re Haley B., 81 Conn. App. 62, 838 A.3d 1006 (2004); see also In re Elysa D., 116 Conn. App. 254, 974 A.2d 834, cert. denied, 293 Conn. 936, 981 A.2d 1079 (2009); In re Shanaira C., 105 Conn. App. 713, 940 A.2d 817, cert. granted on other grounds, 286 Conn. 917, 945 A.2d 977 (2008).