******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE AVIREX R.*
(AC 36291)

Sheldon, Prescott and Bear, Js.

*Argued May 12—officially released July 16, 2014***

(Appeal from Superior Court, judicial district of
Hartford, Juvenile Matters, Burgdorff, J.)

*Joshua Michtom*, assistant public defender, for the
appellant (respondent mother).

*Susan T. Pearlman*, assistant attorney general, with
whom, on the brief, were *George Jepsen*, attorney general,
and *Benjamin Zivyon*, assistant attorney general,
for the appellee (petitioner).

*Robert J. Moore*, for the minor child.

*Opinion*

PRESCOTT, J. The respondent mother, Sara M., appeals from the judgment of the trial court transferring guardianship of her minor son, Avirex R., from the petitioner, the Commissioner of Children and Families, to the child's paternal aunt, Emma G.[1] On appeal, the respondent claims that the court erred by misapplying the statute governing revocations of commitment, and by failing to afford her a presumption of fitness. For the reasons we will set forth, the judgment is affirmed.

The following facts and procedural history are necessary for our resolution of these claims. Avirex was born on September 21, 2011. Because Avirex had opiates in his system at birth, the petitioner placed a ninety-six hour hold on him.[2] On September 29, 2011, within the period of the ninety-six hour hold, the petitioner filed a neglect petition on behalf of Avirex and a motion for an order of temporary custody. The court, *Hon. William L. Wollenberg*, judge trial referee, granted ex parte the motion for an order of temporary custody and ordered specific steps for reunification for both parents. Upon the child's release from the hospital on September 29, 2011, the petitioner placed him with his paternal aunt, Emma G., and he has remained in her care since his release.[3]

On October 7, 2011, after an opportunity for each of the parties to be heard by the court, *Keller, J.*, the court's initial grant of the motion for an order of temporary custody was sustained by the court. Amended specific steps were ordered to facilitate the respondent's reunification with Avirex. The respondent did not comply with all of the steps. For example, she did not comply with the requirement to continue substance abuse and mental health treatment.

The respondent and the father entered pleas of nolo contendere as to the neglect petition, which the court accepted.[4] Both parents, however, contested the disposition of commitment, and that matter was tried to the court, *Burgdorff, J.*, on March 8, 2012. Also on March 8, 2012, the court heard a motion for transfer of guardianship filed by the respondent seeking placement of Avirex with his maternal grandmother.

On March 14, 2012, the court denied the respondent's motion to transfer guardianship to the child's maternal grandmother, adjudicated Avirex neglected pursuant to General Statutes § 46b-120 (6) (B),[5] and committed him to the care and custody of the petitioner. Avirex remained in the care of Emma G., and on May 24, 2013, the petitioner authorized a subsidized guardianship for Emma G., which was later approved by the court.[6] The respondent did not appeal from the denial of her motion to transfer guardianship or the court's order of commitment.[7]

On June 20, 2013, the petitioner filed a motion to

modify disposition pursuant to General Statutes § 46b-129 and Practice Book § 34a-1, and a motion to revoke commitment and transfer guardianship.[8] Both motions sought to end the commitment of Avirex to the petitioner, and to transfer guardianship of him to Emma G.

In response, the respondent filed a motion to revoke commitment on June 25, 2013, in which she objected to the petitioner's request to transfer guardianship. She also requested in her motion that the court order that Avirex be returned to her custody.

On November 1, 2013, the court conducted a hearing on the petitioner's motion to revoke commitment and transfer guardianship. The court was prepared to conduct a hearing at the same time on the respondent's motion to revoke commitment, but she orally withdrew her motion at the commencement of the hearing. The respondent continued to object to the transfer of guardianship to Emma G., and moved the court instead to delay the transfer of guardianship and order a reunification plan with her. The court did not grant the respondent's motion for a continuance and the hearing proceeded.

On November 7, 2013, the court, *Burgdorff, J.*, granted the petitioner's motion to transfer guardianship to Emma G. In its memorandum of decision, the court cited subsection (m) of § 46b-129 as the applicable law and found the following facts. The respondent had a history of crime and domestic violence. After being arrested on January 4, 2012, she left Connecticut, without informing the court, to live with her parents and brother in New Hampshire. The respondent tested positive for illegal substances several times prior to her move to New Hampshire, and she was discharged from the Wheeler Clinic and the Women and Children's Substance Abuse Residential Program at New Life Center for noncompliance with program rules.

Upon moving to New Hampshire, the respondent did, to her credit, seek treatment from the Manchester Metro Treatment Center for opiate dependence in September, 2012, and all of her drug tests since that time were negative for illegal substances. Although the respondent reported to the Department of Children and Families (department) that she was engaging in mental health treatment, she failed to authorize her mental health provider to release her records so that the department could confirm this treatment. Additionally, the department was unable to verify the respondent's source of income. She had represented that she had applied for social security disability benefits, but she failed to disclose the basis of her disability claims or any information as to her current mental health diagnoses or medications.

While living in New Hampshire, the respondent engaged in twice monthly visitations with the child, and

traveled to Connecticut with Avirex's maternal grandmother and half sibling in order to visit with Avirex.[9] Significantly, since moving to New Hampshire, the respondent has failed to inquire independently as to Avirex's well-being or to request additional visits.

Avirex, then two years old, had lived with Emma G. since his discharge from the hospital after his birth. All of his emotional and medical needs were being met by Emma G., with whom Avirex had formed a significant emotional bond. Emma G. had sufficient income to meet his needs and provide stable housing. Finally, Emma G. had been compliant with Avirex's visits with the respondent, the child's father, and the maternal grandmother and siblings.

In light of those findings, none of which the respondent has challenged as clearly erroneous, the court concluded: "[The petitioner] has met [her] burden of proving by a fair preponderance of the evidence that the cause for commitment of Avirex no longer exists in that it is no longer in his best interest to continue with the commitment. Avirex has resided with his paternal aunt since October 11, 2011, a period of over two years. Avirex is in a stable and loving home, and the paternal aunt appears to be devoted to him. She is committed to providing for Avirex's psychological, social emotional and medical needs. He is happy in the placement. The court further finds that the paternal aunt, Emma G., is a suitable and worthy guardian, and that such a disposition is in . . . Avirex's best interest, and most appropriately addresses his need for permanency. To disrupt his placement with his paternal aunt would be contrary to his best interest. . . . [Although] the court recognizes that [the respondent] has been successfully engaged in her substance abuse treatment in New Hampshire, the court is troubled by [the respondent's] refusal to allow the disclosure of her mental health diagnoses and medications. Further, [the respondent] is clearly not self-sufficient as she relies completely on [the] maternal grandmother for financial and housing support. No evidence was presented as to [the respondent's] completion of parenting classes. The court, therefore, further finds that it would not be in Avirex's best interest to consider reunification with [the respondent] at this time."

The court granted the petitioner's motions to open the disposition of commitment and to transfer guardianship, and ordered that the guardianship of Avirex be transferred from the petitioner to Emma G. The court directed Emma G. "to allow [the respondent] such visitation as she deems to be in Avirex's best interest," and referred disputes concerning visitation to the family court. This appeal followed.

On appeal, the respondent claims that the court misapplied § 46b-129 (m). Specifically, she argues that subsection (m) of § 46b-129 requires the court to make a

finding that the cause for commitment no longer exists, and that, after making that finding, the court must presume that the parent is fit to regain custody and that it would be in the best interest of the child to be returned to the parent. The respondent argues that the court failed to make the required finding that the cause for commitment no longer existed and failed to apply the required presumption of fitness in violation of § 46b-129 (m).

We conclude that the court erred by applying subsection (m) of § 46b-129 because the petitioner was not seeking to revoke commitment and return Avirex to the respondent, but instead sought to transfer guardianship to a third party. That procedure is properly governed by subsection (j) of § 46b-129. We further conclude, however, that the court's judgment need not be reversed, as the court still engaged in the analysis otherwise required by subsection (j) of § 46b-129.

We begin our discussion with the standard of review. In order to resolve the respondent's claims on appeal, it is necessary to construe and harmonize various subsections of § 46b-129 and the relevant provisions of our rules of practice implementing that statute. See Practice Book §§ 35a-16, 35a-12A and 35a-20. "[I]ssues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The interpretive construction of the rules of practice is to be governed by the same principles as those regulating statutory interpretation." (Citation omitted; internal quotation marks omitted.) *In re A.R.*, 123 Conn. App. 336, 339, 1 A.3d 1184 (2010).

Accordingly, we turn to the statutory scheme governing the disposition of children who have been found to be abused or neglected. After a child has been found to be neglected or abused, § 46b-129 (j) (2) grants a court four dispositional options: "[T]he court may (A) commit such child or youth to the Commissioner of Children and Families, and such commitment shall

remain in effect until further order of the court, except that such commitment may be revoked or parental rights terminated at any time by the court; (B) vest such child's or youth's legal guardianship in any private or public agency that is permitted by law to care for neglected, uncared-for or abused children or youths or with any other person or persons found to be suitable and worthy of such responsibility by the court, including, but not limited to, any relative of such child or youth by blood or marriage; (C) vest such child's or youth's permanent legal guardianship in any person or persons found to be suitable and worthy of such responsibility by the court, including, but not limited to, any relative of such child or youth by blood or marriage in accordance with the requirements set forth in subdivision (5) of this subsection; or (D) place the child or youth in the custody of the parent or guardian with protective supervision by the Commissioner of Children and Families subject to conditions established by the court."

If the court commits a child to the petitioner, the petitioner must present to the court a permanency plan within nine months of placement of the child or youth in the care or custody of the petitioner. General Statutes § 46b-129 (k) (1). "At a permanency hearing . . . the court shall approve a permanency plan that is in the best interests of the child or youth and takes into consideration the child's or youth's need for permanency. . . . Such permanency plan may include the goal of (A) *revocation of commitment and reunification of the child or youth with the parent or guardian, with or without protective supervision*; (B) *transfer of guardianship or permanent legal guardianship*; (C) long-term foster care with a relative licensed as a foster parent; (D) filing of termination of parental rights and adoption; or (E) another planned permanent living arrangement ordered by the court, provided the Commissioner of Children and Families has documented a compelling reason why it would not be in the best interests of the child or youth for the permanency plan to include the goals in subparagraphs (A) to (D), inclusive, of this subdivision. Such other planned permanent living arrangement may include, but not be limited to, placement of a child or youth in an independent living program or long term foster care with an identified foster parent." (Emphasis added.) General Statutes § 46b-129 (k) (2). Thus, two of the separate and distinct statutory disposition options available to the court are (1) revocation of commitment and reunification with the child's parent or former guardian (with or without protective supervision), or (2) transfer of guardianship to a party other than the child's parent or former guardian.

In the present case, the substance of the motions filed by the petitioner sought transfer of legal guardianship of Avirex from the petitioner to his paternal aunt.[10] See

*In re Cameron C.*, 103 Conn. App. 746, 751, 930 A.2d 826 (2007) (court looks at substance of motion to determine which statute is applicable), cert. denied, 285 Conn. 906, 942 A.2d 414 (2008). The motions, by their terms, did not seek to revoke the commitment of Avirex to the petitioner so that Avirex could be reunified with his parent.[11] Accordingly, the only issue before the court in this case was whether guardianship of Avirex should be transferred to his paternal aunt. If the court were to have answered that question in the negative, Avirex would have remained committed to the petitioner until some other appropriate disposition could be proposed and approved by the court as part of a permanency plan.

With this statutory background in mind and in light of the specific relief sought in the motion before the court, we next address whether the trial court improperly addressed the petitioner's motion pursuant to subsection (m) of § 46b-129, or instead, should have analyzed the motion pursuant to subsection (j) of § 46b-129.

Subsection (j) (3) of § 46b-129 provides in relevant part: "If the court determines that the commitment should be revoked and the child's . . . legal guardianship . . . should vest in someone other than the respondent parent, parents or former guardian . . . there shall be a rebuttable presumption that an award of legal guardianship . . . upon revocation to . . . any relative who is licensed as a foster parent for such child or youth, or who is, pursuant to an order of the court, the temporary custodian of the child or youth at the time of the revocation . . . shall be in the best interests of the child or youth and that such relative is a suitable and worthy person to assume legal guardianship . . . . The presumption may be rebutted by a preponderance of the evidence that an award of legal guardianship to . . . such relative would not be in the child's . . . best interests and such relative is not a suitable and worthy person. . . ."

Subsection (m) of § 46b-129 provides in relevant part: "The commissioner, a parent or the child's attorney may file a motion to revoke a commitment, and, upon finding that cause for commitment no longer exists, and that such revocation is in the best interests of such child or youth, the court may revoke the commitment of such child or youth. . . ."

An obvious difference between these two subsections is that subsection (j) contains specific language referencing a transfer of guardianship to a party other than the child's or youth's parent or former legal guardian and sets forth a presumption as to the individuals, such as other relatives, who should then be given custody, while subsection (m) makes no mention of any individual other than the petitioner, a parent or the child's attorney. Instead, subsection (m) is focused only on whether the child's or youth's commitment should be

revoked without reference to a transfer of guardianship to a party other than the parent or former guardian.[12] As a matter of logic, if the child's or youth's commitment to the petitioner is revoked by the court without a concomitant transfer of guardianship to a third party,[13] then the child must be reunified with the parent or former legal guardian (with or without protective supervision) as contemplated by the permanency plan option set forth in § 46b-129 (k) (2) (A) ("revocation of commitment and reunification of the child or youth with the parent or guardian").

Accordingly, we conclude that the legislature intended that a motion, like the one filed here by the petitioner, seeking to transfer guardianship of a child or youth from the petitioner to an individual other than the parent or former guardian, should be adjudicated by the court pursuant to subsection (j) of § 46b-129. This conclusion is buttressed by reference to Practice Book § 35a-16, which provides in relevant part that "[u]nless filed by the commissioner of the department of children and families, any modification motion to return a child or youth to the custody of the parent without protective supervision shall be treated as a motion for revocation of commitment."

Our conclusion also finds support in our decision in *In re A.R.*, supra, 123 Conn. App. 336. One of the issues in *In re A.R.* was whether the trial court improperly treated a motion to transfer guardianship filed by an intervenor as a motion for revocation of commitment. Id., 337. In delineating the difference between subsection (j) and subsection (m) of § 46b-129, this court stated: "The intervenor claims on appeal that the court incorrectly treated her motion to transfer guardianship as a motion to revoke commitment. She argues that the language of § 46b-129 (j) treats motions to transfer guardianship as separate and distinct from motions to revoke commitment. In addition, she argues that Practice Book § 35a-16 indicates that only motions to modify [disposition] that request that the custody of the child revert to the custody of the parent are to be construed as motions to revoke commitment. . . . We agree." Id., 338–39.

Accordingly, it was improper for the court to treat the petitioner's motion to transfer guardianship to Avirex's paternal aunt as a motion to revoke commitment filed pursuant to subsection (m) of § 46b-129. Instead, the court should have treated the petitioner's motion as having been filed pursuant to subsection (j) of § 46b-129. In light of this conclusion, it is unnecessary to reach the respondent's claim that the trial court did not properly afford a presumption of fitness under subsection (m) of § 46b-129.[14] Although we conclude that the court improperly treated the petitioner's motion under an incorrect subsection of § 46b-129, we further conclude that the court nonetheless engaged in the proper

analysis and made the required findings necessary to transfer guardianship from the petitioner to Emma G. pursuant to § 46b-129 (j).

In order to properly grant a motion to transfer guardianship under subsection (j) of § 46b-129, the court must first determine whether it would be in the best interest of the child for guardianship to be transferred from the petitioner to the proposed guardian. See also Practice Book § 35a-12A; *In re Averiella P.*, 146 Conn. App. 800, 804, 81 A.3d 272 (2013) (applying best interest standard to motion to transfer guardianship from petitioner to child's grandmother). In considering what is in the best interest of the child, subsection (j) creates a rebuttable presumption that if the proposed guardian is a member of one of the enumerated groups of relatives or caregivers, such a transfer is in the child's best interest. The court must then find that the third party is a suitable and worthy guardian. See General Statutes § 46b-129 (j); Practice Book § 35a-12A ("the moving party has the burden of proof that the proposed guardian is suitable and worthy"). Subsection (j) (3) of § 46b-129 also provides a rebuttable presumption that if the proposed guardian is a relative of the child, and is either licensed by the department as a foster parent, or has temporary custody of the child when the motion to transfer guardianship is heard by the court, such a relative is presumed to be a suitable and worthy person to assume legal guardianship.

Unlike subsection (m) of § 46b-129, neither subsection (j) of § 46b-129 nor Practice Book § 35a-12A provides a presumption of fitness for a parent or former guardian (who may be opposing the motion). See footnote 8 of this opinion. This is because a motion to transfer guardianship is simply dispositional in nature, and does not require the court to review the underlying cause for commitment, which has already been judicially determined during an earlier phase of the proceeding. Compare Practice Book § 35a-12A (a) ("[m]otions to transfer guardianship are dispositional in nature, based on the prior adjudication") with § 46b-129 (m) (requiring court to review cause for commitment and conclude that it no longer exists before revoking commitment of child). Accordingly, it is important to note that a transfer of guardianship pursuant to subsection (j) of § 46b-129 does not terminate the respondent parent's or former guardian's relationship with the child. If a court orders, as it did here, legal guardianship of a child or youth to be vested in a suitable and worthy person pursuant to subsection (j) of § 46b-129, the respondent parents or former guardians of the child or youth are not left without recourse. Pursuant to § 46b-129 (n), the respondent parents or former guardian may file a petition to reinstate guardianship of the child or youth in such parent or legal guardian.[15] See also Practice Book § 35a-20.

Because Emma G., Avirex's paternal aunt, was, by order of the court, his temporary custodian at the time the court heard both of the petitioner's motions, there existed a rebuttable presumption that Emma G. was a suitable and worthy guardian, and that a transfer of guardianship from the petitioner to Emma G. was in Avirex's best interest.[16] See Practice Book § 35a-12A (b). It was, therefore, the respondent's burden to rebut the presumption by demonstrating by a preponderance of the evidence that Emma G. was not a suitable and worthy guardian, or that it was not in Avirex's best interest for guardianship to be transferred from the petitioner to Emma G.

Although the court's memorandum of decision focuses at least in part on the respondent's current fitness to parent, the court also specifically found that the transfer of guardianship from the petitioner to Emma G. was in Avirex's best interest, and that Emma G. was a suitable and worthy guardian. The respondent has not challenged these findings, and the record adequately supports them. We, therefore, conclude that the court made the requisite findings, pursuant to § 46b-129 (j), that were necessary to transfer guardianship of Avirex from the petitioner to Emma G. Accordingly, we affirm the trial court's judgment.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** July 16, 2014, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The father, Hector R., is not a party to this appeal. At the hearing before the trial court, the father's counsel represented to the court that he did not object to the petitioner's motion to modify disposition, and that he agreed with the transfer of guardianship from the petitioner to Emma G.

[2] General Statutes § 17a-101g provides in relevant part: "(e) If the Commissioner of Children and Families, or the commissioner's designee, has probable cause to believe that the child or any other child in the household is in imminent risk of physical harm from the child's surroundings and that immediate removal from such surroundings is necessary to ensure the child's safety, the commissioner, or the commissioner's designee, shall authorize any employee of the department or any law enforcement officer to remove the child and any other child similarly situated from such surroundings without the consent of the child's parent or guardian. The commissioner shall record in writing the reasons for such removal and include such record with the report of the investigation conducted under subsection (b) of this section.

"(f) The removal of a child pursuant to subsection (e) of this section shall not exceed ninety-six hours. During the period of such removal, the commissioner, or the commissioner's designee, shall provide the child with all necessary care, including medical care, which may include an examination by a physician or mental health professional with or without the consent of the child's parents, guardian or other person responsible for the child's care, provided reasonable attempts have been made to obtain consent of the child's parents or guardian or other person responsible for the care of such child. During the course of a medical examination, a physician may perform diagnostic tests and procedures necessary for the detection of child abuse or neglect. If the child is not returned home within such ninety-six-hour period, with or without protective services, the department shall

proceed in accordance with section 46b-129. . . .”

[3] Emma G. is licensed by the department as a foster parent.

[4] The respondent entered her plea of nolo contendere on October 7, 2011, and the father entered his plea of nolo contendere on November 8, 2011.

[5] General Statutes § 46b-120 (6) provides in relevant part that “[a] child or youth may be found ‘neglected’ who, for reasons other than being impoverished . . . (B) is being denied proper care and attention, physically, educationally, emotionally, or morally . . . .”

[6] Pursuant to General Statutes § 17a-126 (a), the petitioner is authorized to establish a subsidized guardianship program for the benefit of children living in foster care with relatives after the child has been in the state’s care for six months.

[7] The court’s order of commitment was that “[t]he child . . . is committed until further order of the court to the [petitioner] who shall be the guardian of the child . . . according to the statutes in such cases. Commitment is effective 03/14/2012.” After the commitment, therefore, neither the respondent nor the father were guardians of Avirex.

[8] Although the petitioner brought her motion to modify disposition pursuant to § 46b-129, she did not specify the subsection of the statute upon which she sought relief. We urge the petitioner to indicate in the future the specific subsection of § 46b-129 upon which she seeks relief in order to help prevent confusion over the relief sought and the appropriate legal standard that should be applied.

[9] The respondent also had a documented history with Child Protective Services in New Hampshire. Guardianship of her other child, Avirex’s half sibling, previously was transferred to the maternal grandmother through the Probate Court in New Hampshire due to the respondent’s substance abuse, prostitution, neglect, transience and domestic violence.

[10] The only motions before the court were the petitioner’s motions to modify disposition, and to revoke commitment and transfer guardianship. Both motions sought to transfer the guardianship of Avirex from the petitioner to his paternal aunt, Emma G.

[11] Indeed, an earlier motion to revoke the commitment of Avirex to the petitioner so that he could be reunified with the respondent was withdrawn by the respondent.

[12] We have previously held that in order to grant a motion to revoke commitment under subsection (m) of § 46b-129, “the respondent must first prove that no cause for commitment presently exists. Second, [the petitioner] must fail in her burden to establish that it would be in the best interests of the [child] to remain committed.” *In re Patricia C.*, 93 Conn. App. 25, 31–32, 887 A.2d 929, cert. denied, 277 Conn. 931, 896 A.2d 101 (2006).

[13] We note that, as a practical matter, upon a finding by the court that guardianship of a child should be transferred from the petitioner to a third party, the court must necessarily revoke the commitment of that child to the petitioner so that the transfer may be effectuated.

[14] We do not disagree with the respondent that subsection (m) of § 46b-129 and Practice Book § 35a-14A give rise to a rebuttable presumption that, upon a finding that the cause for the child’s commitment no longer exists, the court should ordinarily order reunification and return custody of the child to the parent or former guardian. If a motion to revoke commitment is properly filed under subsection (m) because it seeks to reunify the child with a parent or former guardian, the parent or former guardian should presumptively regain custody if the cause for commitment no longer exists, unless the department can establish that reunification is not in the best interest of the child. It is this statutory burden shifting analysis that the respondent claims the court failed to utilize.

[15] The statute also provides that “[n]o such petition may be filed more often than once every six months.” General Statutes § 46b-129 (n).

[16] As we noted previously, Emma G. is licensed by the department as a foster parent. See footnote 3 of this opinion. Pursuant to Practice Book § 35a-12A (b), the court may presume that she was a suitable and worthy person to assume legal guardianship on this basis as well.