******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## IN RE LEO L. ET AL.*
### (AC 42478)

Elgo, Moll and Norcott, Js.

*Syllabus*

The intervenor, the maternal grandfather of the minor children, L and D, appealed to this court from the judgment of the trial court denying his motion to transfer to himself and his fiancée the guardianship of the children, who had been placed with nonrelative foster parents. The trial court also had terminated the parental rights of the children's parents. The intervenor claimed that the trial court abused its discretion and erroneously determined that the transfer of guardianship would not be in the children's best interests. *Held* that the trial court did not abuse its discretion in denying the intervenor's motion to transfer guardianship: that court, which made findings that were not challenged by the intervenor, that the children referred to their foster parents as "mom" and "dad," were succeeding in school, and were thriving with their foster family in a stable environment for the first time in their young lives, did not err in determining that the transfer of guardianship of the children to the intervenor would not be in the children's best interests, and although the trial court acknowledged the existence of evidence that weighed in favor of the intervenor's motion, it had the authority to weigh the evidence elicited in the intervenor's favor and, on the basis of all of the evidence before it, determined that transferring guardianship was not in the children's best interests, and it was not within the province of this court to second-guess that reasoned determination; moreover, the intervenor's claim that the court failed to acknowledge certain evidence of the foster father's alleged violence and abuse toward the children and the foster parents' move to Massachusetts with the children was unavailing, as the trial court explicitly stated that its decision to deny the intervenor's motion was made in light of all the facts before it, and that statement was entitled to deference.

Argued May 13—officially released June 26, 2019**

*Procedural History*

Petitions by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor children, brought to the Superior Court in the judicial district of Middlesex, Child Protection Session, where the court, *Woods, J.*, granted the maternal grandfather's motion to intervene; thereafter, the matter was tried to the court; judgments terminating the respondents' parental rights and denying the intervenor's motion to transfer guardianship, from which the intervenor appealed to this court. *Affirmed.*

*Christopher DeMatteo*, for the appellant (intervenor).

*Evan O'Roark*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, *Clare Kindall*, solicitor general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Opinion*

MOLL, J. The intervening grandfather, Eugene L. (intervenor), appeals from the judgment of the trial court denying his motion to transfer the guardianship of his two minor grandchildren, Leo L. and Dakota F. H., to himself and his fiancée, Crystal H. On appeal, the intervenor contends that the court erroneously determined that the transfer of guardianship would not be in the children's best interests and, thus, abused its discretion in denying his motion. We disagree and, accordingly, affirm the judgment of the trial court.

The following procedural history and facts, as set forth in the trial court's memorandum of decision, are relevant to our disposition of the intervenor's claim. Leo L. and Dakota F. H. are the children of Monique L., and the intervenor is their maternal grandfather. On August 4, 2016, the children were committed to the care and custody of the Department of Children and Families (department) upon being adjudicated neglected. Shortly thereafter, on August 10, 2016, they were placed with nonrelative foster parents in whose care they have remained.

In September, 2017, the department changed its plan for the children from reunification with their mother to the termination of parental rights and eventual adoption. On September 27, 2017, after the intervenor had learned of the department's intentions, he successfully moved to intervene in the case. On December 21, 2017, Monique L. consented to the termination of her parental rights with respect to the children.[1] On January 8, 2018, pursuant to Practice Book § 35a-12A,[2] the intervenor moved to transfer guardianship of the children to himself and Crystal H. Following a four day trial during the period of February to June, 2018, the trial court issued a memorandum of decision denying the motion on the basis that, while the intervenor and his fiancée might be suitable and worthy guardians, the requested transfer of guardianship would not be in the children's best interests.[3]

In support of its ruling, the court made the following relevant factual findings. The children had transitioned well into their foster home. The current foster parents are seeking to adopt the children. The children refer to their foster parents as "mom" and "dad" and have maintained a close relationship with them. Although Leo L. initially expressed hesitation about being adopted, that reluctance was no longer present. Indeed, both children indicated a desire to be adopted by, or otherwise to remain with, their foster parents. The court also found that Leo L. was enjoying school and was "meeting grade level expectations" and that Dakota F. H. had "greatly improved her academic skills" while in the care of her foster parents. When concerns arose regarding the ability of Dakota F. H. to self-regulate,

she engaged in therapy that improved her interactions with others.

Additionally, the court found that the children had "grown, matured, and adjusted to their current living placement" and that they had lived with their foster parents for more than two years. They also had bonded with their foster sibling. Against these findings, the court emphasized the stability that the foster family had provided the children: "Although other living arrangements might also provide the children with love, affection, safety, and guidance, the court notes that the children's preadoptive placement provides all of these things and that disrupting their current placement would introduce great instability into their lives." Furthermore, the court noted that the intervenor had declined three prior opportunities to obtain guardianship of the children.[4] This appeal followed. Additional facts will be set forth as necessary.

On appeal, the intervenor generally does not challenge the factual findings underpinning the court's determination that a transfer of guardianship would not be in the children's best interests.[5] Rather, he maintains that the court failed to consider certain evidence adduced at trial that undermined its determination that placement with the intervenor and Crystal H. would not be in the children's best interests. Specifically, the intervenor points to testimony from both Crystal H. and a department social worker regarding the foster father's alleged anger and use of violence toward the children. The intervenor also relies on evidence that the foster parents moved the children to Massachusetts during the trial, which he claims was "surprising and deceitful" and not in the children's best interests, particularly in light of a department policy that proscribes the removal of foster children from Connecticut without prior department approval. The intervenor submits that this evidence requires the conclusion that the court abused its discretion in denying his motion. We are not persuaded.

We begin our analysis with the standard of review and applicable legal principles. The adjudication of a motion to transfer guardianship pursuant to General Statutes § 46b-129 (j) (2)[6] requires a two step analysis. "[T]he court must first determine whether it would be in the best interest[s] of the child for guardianship to be transferred from the petitioner to the proposed guardian. . . . [Second,] [t]he court must then find that the third party is a suitable and worthy guardian. . . . This principle is echoed in Practice Book § 35a-12A (d), which provides that the moving party has the burden of proof that the proposed guardian is suitable and worthy and that transfer of guardianship is in the best interests of the child." (Citation omitted; internal quotation marks omitted.) *In re Mindy F.*, 153 Conn. App. 786, 802, 105 A.3d 351 (2014), cert. denied, 315 Conn.

913, 106 A.3d 307 (2015).

"To determine whether a custodial placement is in the best interest of the child, the court uses its broad discretion to choose a place that will foster the child's interest in sustained growth, development, well-being, and in the continuity and stability of its environment. . . . We have stated that when making the determination of what is in the best interest of the child, [t]he authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did. . . . [G]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . [Appellate courts] are not in a position to second-guess the opinions of witnesses, professional or otherwise, nor the observations and conclusions of the [trial court] when they are based on reliable evidence." (Internal quotation marks omitted.) *In re Anthony A.*, 112 Conn. App. 643, 653–54, 963 A.2d 1057 (2009).

We have reviewed the evidence presented to the trial court that relates to the intervenor's specific claims on appeal. By way of summary, the parties submitted conflicting evidence regarding whether the foster father had exhibited anger and violence toward the children. The intervenor presented evidence that the foster father yelled and swore at the children in March, 2018. He further proffered testimony from Crystal H. that she overheard Leo L. describe physical abuse by his foster father in April and June, 2018. The department offered evidence of its investigation with respect to these allegations. This evidence included testimony that Leo L. had admitted to manufacturing the allegation of physical abuse by his foster father and that, following an inquiry into the claim, the department ultimately found it to be unsubstantiated.[7] Furthermore, a department social worker testified that the children appeared comfortable around, played with, and did not fear their foster father.

With respect to the foster parents' move from Connecticut to Massachusetts, the record reveals that the foster parents relocated with the children in May, 2018, without the department's knowledge and in violation of a department policy that requires foster parents to obtain department permission prior to moving foster children out of state. The record also shows, however, that, although the foster parents did not inform the department of the move at the time it occurred, the

department knew in advance that it was the foster parents' intention to move from Connecticut. For their contravention of department policy, the department issued the foster parents a regulatory violation.

This court does not make credibility determinations, and it is the trial court's role to weigh the evidence presented and determine relative credibility when it sits as a fact finder. See *Zilkha* v. *Zilkha*, 167 Conn. App. 480, 495, 144 A.3d 447 (2016). Here, the trial court had the authority to weigh evidence elicited in the intervenor's favor. See *In re Bianca K.*, 188 Conn. App. 259, 270, 203 A.3d 1280 (2019) ("[I]t is the exclusive province of the trier of fact to weigh conflicting testimony and make determinations of credibility, crediting some, all or none of any given witness' testimony. . . . Questions of whether to believe or to disbelieve a competent witness are beyond our review." [Internal quotation marks omitted.]). In addition, we have held that "a trial court may rely on the relationship between a child and the child's foster parents to determine whether a different placement would be in the child's best interest." *In re Athena C.*, 181 Conn. App. 803, 821, 186 A.3d 1198, cert. denied, 329 Conn. 911, 186 A.3d 14 (2018). The court made findings, unchallenged by the intervenor, that the children referred to their foster parents as "mom" and "dad," were succeeding in school, and were thriving with their foster family in a stable environment for the first time in their young lives. Although we acknowledge, as the trial court did, the existence of evidence that weighed in favor of the intervenor's motion, the court, on the basis of all of the evidence before it, decided that transferring guardianship was not in the children's best interests. It is not our province to second-guess that reasoned determination. See id., 820.

Finally, the intervenor contends that because the court failed to acknowledge the evidence of the foster father's alleged violence and abuse toward the children and the foster parents' move to Massachusetts with the children in its memorandum of decision, it failed to consider that evidence in conducting the "best interests" analysis. We do not agree. The court explicitly stated that its decision to deny the intervenor's motion was made "[i]n light of all the facts before it . . . ." That statement is entitled to deference. See id. ("[T]he [trial] court considered all the evidence before it to decide whether immediately transferring guardianship to the grandmother would be in the best interest of the child. We will not, on appeal, second-guess the court's determination that it was not.").

In sum, we conclude that the court did not err in determining that the transfer of guardianship of Leo L. and Dakota F. H. to the intervenor and Crystal H. would not be in the children's best interests. Accordingly, the court did not abuse its discretion in denying the interve-

nor's motion to transfer guardianship.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** June 26, 2019, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] On February 23, 2018, Leo L.'s father also consented to the termination of his parental rights by telephone. On July 19, 2018, the putative father of Dakota F. H. was defaulted for failure to appear.

[2] Practice Book § 35a-12A provides: "(a) Motions to transfer guardianship are dispositional in nature, based on the prior adjudication.

"(b) In cases in which a motion for transfer of guardianship seeks to vest guardianship of a child or youth in any relative who is the licensed foster parent for such child or youth, or who is, pursuant to an order of the court, the temporary custodian of the child or youth at the time of the motion, the moving party has the burden of proof that the proposed guardian is suitable and worthy and that transfer of guardianship is in the best interests of the child. In such cases, there shall be a rebuttable presumption that the award of legal guardianship to that relative shall be in the best interests of the child or youth and that such relative is a suitable and worthy person to assume legal guardianship. The presumption may be rebutted by a preponderance of the evidence that an award of legal guardianship to such relative would not be in the child's or youth's best interests and such relative is not a suitable and worthy person.

"(c) In cases in which a motion for transfer of guardianship, if granted, would require the removal of a child or youth from any relative who is the licensed foster parent for such child or youth, or who is, pursuant to an order of the court, the temporary custodian of the child or youth at the time of the motion, the moving party has the initial burden of proof that an award of legal guardianship to, or an adoption by, such relative would not be in the child's or youth's best interest and that such relative is not a suitable and worthy person. If this burden is met, the moving party then has the burden of proof that the movant's proposed guardian is suitable and worthy and that transfer of guardianship to that proposed guardian is in the best interests of the child.

"(d) In all other cases, the moving party has the burden of proof that the proposed guardian is suitable and worthy and that transfer of guardianship is in the best interests of the child."

[3] The court's memorandum of decision on the intervenor's motion to transfer guardianship was issued simultaneously with a memorandum of decision on the department's petitions for termination of parental rights. The latter decision is not at issue in this appeal.

[4] The court found that, prior to the birth of Dakota F. H., Monique L. took Leo L. to South Carolina where he was retrieved by the intervenor because of Monique L.'s physical neglect of Leo L. Monique L. eventually returned to Connecticut and regained care of Leo L. In February, 2016, the children moved in with the intervenor and Crystal H. but were removed after a few months as a result of Crystal H.'s inability to manage the children alone.

[5] The intervenor claims, however, that the court erred in finding that Leo L. wanted to be adopted by his foster parents. Specifically, the intervenor asserts that, although Leo L. stated that he wanted to be adopted by his foster parents, he also stated that he was considering living with the intervenor and Crystal H., such that he could not choose between them. As the department points out, Leo L.'s therapist testified at trial that, although Leo L. made these claims, it was her opinion that he did so because he thought that living with the intervenor would be the only way to maintain contact with him.

A trial court's factual findings will not be set aside unless they are clearly erroneous. *Kirwan* v. *Kirwan*, 185 Conn. App. 713, 726, 197 A.3d 1000 (2018). "A finding of fact is clearly erroneous when there is *no evidence* in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Emphasis in original; internal quotation marks omitted.) Id. Because there is evidence in the record to support the trial court's factual finding, we do not disturb it on

appeal. See *In re Janazia S.*, 112 Conn. App. 69, 92, 961 A.2d 1036 (2009).

[6] General Statutes § 46b-129 (j) (2) provides: "Upon finding and adjudging that any child or youth is uncared for, neglected or abused the court may (A) commit such child or youth to the Commissioner of Children and Families, and such commitment shall remain in effect until further order of the court, except that such commitment may be revoked or parental rights terminated at any time by the court; (B) vest such child's or youth's legal guardianship in any private or public agency that is permitted by law to care for neglected, uncared for or abused children or youths or with any other person or persons found to be suitable and worthy of such responsibility by the court, including, but not limited to, any relative of such child or youth by blood or marriage; (C) vest such child's or youth's permanent legal guardianship in any person or persons found to be suitable and worthy of such responsibility by the court, including, but not limited to, any relative of such child or youth by blood or marriage in accordance with the requirements set forth in subdivision (5) of this subsection; or (D) place the child or youth in the custody of the parent or guardian with protective supervision by the Commissioner of Children and Families subject to conditions established by the court."

[7] Testimony from trial also revealed complaints from Leo L. and Dakota F. H. that their foster father had struck them on the buttocks with a wooden spoon in early June, 2018. The foster father denied the claim and stated that he would hit a wooden spoon against his own hand in order to threaten discipline. A department social worker testified that when she observed the children with their foster father after these allegations, the children were affectionate and loving with him.