******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# IN RE M. S.*
## (AC 47122)

Alvord, Moll and Seeley, Js.

### *Syllabus*

The minor child, M, appealed to this court from the judgment of the trial court sustaining an ex parte order granting temporary custody of M to the petitioner, the Commissioner of Children and Families, and adjudicating M neglected pursuant to statute (§ 46b-129). The respondent mother, S, had a long-standing issue with alcohol abuse and would engage in binge drinking outside the home. During these binges, S would leave M in the care of her partner, H. Although H has been taking care of M for many years and was a father figure to her, he was also a registered sex offender, was on the central registry of the Department of Children and Families for physical abuse of a child and has a history of intimate partner violence. At the time the ex parte order of temporary custody was granted, M was in the care of H and S's whereabouts were unknown and no one was able to contact her. At the adjudication hearing, the trial court found, inter alia, that H had no legal authority with respect to M and no ability to address emergencies or her needs, and it expressed those same concerns if S were to relapse and leave the home again. The trial court also found that, given H's background, he may be an inappropriate caregiver, could not find him "suitable and worthy" and thus found an element of predictive neglect based on the caregiver in whom S had vested M's care. On appeal, M claimed that the trial court applied the incorrect legal standard in sustaining the order of temporary custody, specifically, that the court failed to find that she was in immediate physical danger because the only allegation by the petitioner concerning an immediate risk of physical danger to M was that she had been left in the care of someone unfit to care for her. *Held* that the trial court applied the correct legal standard in sustaining the order of temporary custody and in adjudicating M neglected: the trial court accurately set forth the legal standard in the adjudication hearing's opening, its findings regarding S's issues with alcohol abuse satisfied § 46b-129, and a review of the entire record provided strong support for this conclusion; moreover, the court used the phrase "suitable and worthy" when referencing H only after it had set forth sufficient findings in support of sustaining the order of temporary custody and thus the court's use of that phrase

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

did not lead to the conclusion that the court had used that standard in sustaining the order of temporary custody; furthermore, H was not a party to the action, nor was there any motion filed to vest temporary custody of M with H and, thus, the potential outcomes of the hearing were limited to the trial court sustaining the order of temporary custody or vacating the order of temporary custody and returning M to S.

Argued May 22—officially released July 22, 2024**

*Procedural History*

Petition by the Commissioner of Children and Families to adjudicate the respondents' minor child neglected, brought to the Superior Court in the judicial district of New London, Juvenile Matters at Waterford, and tried to the court, *Hon. John C. Driscoll*, judge trial referee; judgment sustaining an ex parte order of temporary custody and adjudicating the minor child neglected, from which the minor child appealed to this court. *Affirmed*.

*Joshua D. Michtom*, senior assistant public defender, for the appellant (minor child).

*Nisa Khan*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (petitioner).

*Opinion*

ALVORD, J. This appeal, brought by the minor child, M. S., arises from the trial court's judgment sustaining an ex parte order granting temporary custody of the child to the petitioner, the Commissioner of Children and Families, and adjudicating the child neglected. On appeal, the child challenges only the sustaining of the order of temporary custody and claims that the court erred in making that decision without finding that she was at risk of immediate physical harm. The respondent

---

** July 22, 2024, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

mother, Stephanie S., is not participating in this appeal.[1] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of this appeal. The respondent's involvement with the Department of Children and Families (department) began before the order of temporary custody because of concerns regarding the respondent's substance use. The department has had prior involvement with the child and with an older sibling, who now lives in Ohio. In June, 2023, the department received a referral from a therapist who was treating the child's maternal grandmother (grandmother). The grandmother had expressed concern to her therapist because the respondent had disappeared and left the child, who was eleven years old at the time, with the respondent's partner, S, who is a registered sex offender. The grandmother also reported concern about the respondent's alcohol use.

After unsuccessful attempts to contact the respondent, the department called S and made contact with him through a subsequent text message. S provided an address where he was staying with the child, and the department conducted a visit there on July 18, 2023. Also on that date, the petitioner, pursuant to General Statutes § 17a-101g, invoked a ninety-six hour hold on the child and placed the child in the care and custody of the petitioner. On July 21, 2023, the petitioner filed a motion for an order of temporary custody, alleging that the child was "in immediate physical danger from surroundings." The order of temporary custody was granted ex parte by the court, *Hoffman, J.*, that same day, with the court finding that the child was "in immediate physical danger from surroundings . . . [a]nd

[1] The respondent mother did not file an appeal or submit a brief in the present appeal. The respondent father did not participate in the proceedings before the trial court. We, therefore, refer in this opinion to the respondent mother as the respondent.

[a]s a result of said conditions, the child's . . . safety [was] endangered and immediate removal from such surroundings [was] necessary to ensure the child's . . . safety and continuation in the home [was] contrary to the welfare of said child . . . ." Also on July 21, 2023, the petitioner filed a neglect petition. The respondent did not appear at the preliminary hearing held before the court, *Hon. John C. Driscoll*, judge trial referee, on July 26, 2023. The order of temporary custody was sustained without prejudice.

On August 29, 2023, the respondent appeared in court for the first time and entered denials to the allegations in the neglect petition. The respondent also filed a motion to vacate the order of temporary custody. On September 15, 2023, the petitioner filed a motion to consolidate the trial on the contested order of temporary custody with the trial on the adjudicatory phase of the neglect petition, which the court, *Hon. John C. Driscoll*, judge trial referee, granted on September 27, 2023, the first day of trial. The respondent and S were present for the hearing.

At the consolidated trial, the petitioner presented the testimony of Kaitlyn Grayson, an investigative social worker with the department; Elizabeth Caviggia, a social worker supervisor with the department; and Jennifer Manfredi, a social worker with the department. Both the respondent and the child declined to present the testimony of any witnesses.

On October 11, 2023, the court adjudicated the child neglected and sustained the order of temporary custody. The court found that the whereabouts of the child's father was unknown and that he had not been involved in the child's life for years. The court found that, at the time of the granting of the ex parte order of temporary custody, the respondent's whereabouts

also were unknown. The court noted that the respondent has a long-standing issue with alcohol. Although the respondent has an agreement with S that she would not drink in the home, the agreement has not controlled her alcoholism. The respondent is a binge drinker and periodically leaves the home and goes off for twenty-four to forty-eight hours. In June or early July, 2023, the respondent left the home on an extended absence. No one, including the child, the grandmother, or S, knew where the respondent was. She did not answer text messages or phone calls or otherwise communicate in any way.

Thus, the court found that, as of the adjudication date, the child was neglected, in that she had been abandoned by the respondent; was being denied proper care and attention, physically, educationally, emotionally or morally; and was being permitted to live under conditions, circumstances or associations injurious to her well-being.

The court noted that the respondent had returned by the time of the hearing and had participated fully in the hearing. The court found that the respondent had entered a detoxification program for approximately one month, had entered an intensive outpatient program, and was taking steps to address her alcohol use. The court also expressed its concern that there may be issues of control and dependency with respect to the relationship between the respondent and S.

The court found that the child had been left by the respondent in the care of S, who had been a caregiver for the child for many years. The court found that S, both at the time the respondent left and at the time of the court's decision, had no legal authority with respect to the child and no ability to address emergencies or her needs. The court expressed the same concern if the respondent were to relapse and leave the home again.

With respect to S, the court found that he is a registered sex offender, had been imprisoned following conviction of a "heinous and violent crime,"[2] was listed on the central registry of the department for physical abuse of a child, and had had his parental rights as to another child terminated. Given his background, the court stated that S may be an inappropriate caregiver, interposed that it could not, at the time of its decision, find him suitable and worthy, and found an element of predictive neglect based on the caregiver in whom the respondent had vested the child's care. The court also expressed concern about the appropriateness of text messages sent by S to the child.[3]

The court sustained the order of temporary custody and adjudicated the child neglected. The court did not enter a disposition, stating that it was ordering psychological examinations of the child, the respondent, and S. This appeal, which challenges only the trial court's judgment sustaining the order of temporary custody, followed.

We first set forth some overarching legal principles and discuss our standard of review. General Statutes § 46b-129 "governs petitions to adjudicate a child neglected, uncared for, or abused. This court previously has explained that subsection (b) of § 46b-129 authorizes courts to issue an order ex parte vesting in some suitable agency or person the child's or youth's temporary care and custody if it appears, on the basis of the petition and supporting affidavits, that there is reasonable cause to believe that (1) the child or youth is

---

[2] Caviggia testified that S "had a significant history of intimate partner violence" and that he had sexually assaulted a woman on two occasions, which resulted in criminal convictions for which he had been incarcerated.

[3] Caviggia testified that S sent the child a text message in which he stated something to the effect of, "I woke up this morning and I missed holding you."

suffering from serious physical illness or serious physical injury or is in immediate physical danger from the child's or youth's surroundings, and (2) that as a result of said conditions, the child's or youth's safety is endangered and immediate removal from such surroundings is necessary to ensure the child's or youth's safety . . . .

"A preliminary hearing on any ex parte custody order . . . issued by the court shall be held not later than ten days after the issuance of such order. . . . General Statutes § 46b-129 (b). Connecticut law is clear that, in the context of a hearing for an order of temporary custody pursuant to § 46b-129 (b), a finding of immediate physical danger is a prerequisite to the court's entry of a temporary order vesting custody of a child in one other than the child's parents. . . .

"Following the preliminary hearing on an ex parte order of temporary custody, [u]pon request, or upon its own motion, the court shall schedule a hearing on the order for temporary custody . . . to be held not later than ten days after the date of the preliminary hearing. General Statutes § 46b-129 (f). The proper standard of proof in a [contested hearing] on an order of temporary custody is the normal civil standard of a fair preponderance of the evidence. . . .

"In an appeal taken from a trial court's decision to sustain an ex parte order of temporary custody, the applicable standard of review depends on the nature of the claim raised." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *In re Alizabeth L.-T.*, 213 Conn. App. 541, 551–52, 278 A.3d 547 (2022).

In the present case, the child is not challenging any of the factual findings of the court. The child claims that the court applied the incorrect legal standard in sustaining the order of temporary custody, which raises an issue of law over which we exercise plenary review.

*In re Annessa J.*, 343 Conn. 642, 667, 284 A.3d 562 (2022); see also *In re Xavier H.*, 201 Conn. App. 81, 95, 240 A.3d 1087 ("[t]he consideration of whether the court applied an incorrect legal test presents a question of law, which requires our plenary review"), cert. denied, 335 Conn. 981, 241 A.3d 705 (2020), and cert. denied, 335 Conn. 982, 241 A.3d 705 (2020). Moreover, "[t]he interpretation of a trial court's judgment presents a question of law over which our review is plenary. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole. . . . If there is ambiguity in a court's memorandum of decision, we look to the articulations [if any] that the court provides.[4] . . . [W]e are mindful that an opinion must be read as a whole, without particular portions read in isolation, to discern the parameters of its holding. . . . Furthermore, [w]e read an ambiguous trial court record so as to support, rather than contradict, its judgment." (Citation omitted; footnote added; internal quotation marks omitted.) *In re Xavier H.*, supra, 95.

Specifically, the child claims that the court erred in sustaining the order of temporary custody on the basis that it improperly failed to find that the child was in immediate physical danger. She contends that "the only allegation by [the petitioner] concerning an immediate risk of physical danger to [the child] was that she was left in the care of someone unfit to care for her. . . . The trial court applied a legally erroneous standard in analyzing this question, and even under this erroneous

---

[4] Counsel for the child did not seek reargument or an articulation of the trial court's decision sustaining the order of temporary custody. See Practice Book § 66-5.

analysis, found that [the petitioner] had not adduced sufficient evidence to satisfy its burden." (Emphasis omitted.) We disagree.

We first note that our Supreme Court "has never required the talismanic recital of specific words or phrases if a review of the entire record supports the conclusion that the trial court properly applied the law." (Internal quotation marks omitted.) *In re Annessa J.*, supra, 343 Conn. 677; see also *In re Xavier H.*, supra, 201 Conn. App. 97 ("although the court did not use the talismanic phrasing of the statute, its framing of the legal question before it, and its findings, taken as a whole, nonetheless, satisfy the statute"). Because the court in the present case did not recite the immediate physical danger standard in its oral decision sustaining the order of temporary custody, we look to the entire record to determine whether the court properly applied that standard.

Reading the record as a whole, we conclude that the court properly applied the relevant legal standard and that its findings satisfy § 46b-129.[5] In its decision, the court made several findings with respect to the respondent's alcohol use, which led to her disappearances from the home. The most recent absence from the home was extensive in length, and no one knew where she was, nor was anyone able to contact her. The court found that, despite the respondent's having taken some steps to address her alcohol use, those steps were insufficient to allow her to return to a full-time caregiving role.

[5] The present case is distinguishable from *In re Chronesca D.*, 126 Conn. App. 493, 13 A.3d 1106 (2011), on which the child relies. In that case, this court reversed the judgment of the trial court committing the minor child to the temporary custody of a cousin of the minor child's father because such order was improper given the trial court's express finding that the minor child was not in immediate physical danger from her surroundings. Id., 494–95.

These findings, which are not challenged on appeal, were supported by the evidence. Grayson testified that the respondent has a pending criminal charge of operating a motor vehicle while under the influence of alcohol, stemming from a 2020 incident in which she drove her car into a brick wall while intoxicated. Caviggia testified that the respondent's alcohol use appeared to be increasing over the past couple of years. Grayson testified that the child reported that, although the respondent previously had disappeared for shorter time periods, the child and S typically were able to contact her via text message or telephone. In this most recent instance, however, Caviggia testified that she was concerned because the respondent, without providing any information as to her whereabouts, had left the child for a period of approximately one month with S, who had no legal authority or ability to make medical decisions with respect to the child. Grayson testified that the child told her that the child and S had continued to call the respondent's phone and leave voicemails, but that they were not successful in contacting the respondent during her absence. They knew that her phone was turned on, but no calls were returned. Grayson testified that, when the respondent ultimately was located and made aware that the child had been removed from the home, the respondent indicated to the police that she was not going to return home. Grayson testified that, when the respondent spoke to her on the phone, the respondent presented as under the influence of alcohol and, rather than offering to return home to care for the child, stated that she was going to have her son from Ohio come to Connecticut to take care of the child.

Manfredi testified that the child was very worried about the respondent and "very distressed at [the respondent] being gone." Manfredi testified that the child told her that things were better recently because

the respondent no longer drinks alcohol in the home and instead leaves the home to drink, but the child reported that she previously had cared for the respondent when she was intoxicated and had picked her up out of the street. The child told Manfredi that she was worried that the respondent could not quit drinking and that, although the respondent will try for a while, she always ends up going back to it.

A review of the entire record provides strong support for the conclusion that the court properly applied the law. In opening the hearing, the court accurately noted the legal standard applicable to sustaining an order of temporary custody, remarking, in overruling the respondent's objection to consolidation, that "[i]t's been my standard policy, with respect to consolidation, to say that if the [order of temporary custody] is sustained, then a neglect adjudication follows on a per se basis. I can't find that the child is *in imminent risk of physical harm* and then not find that they were neglected." (Emphasis added.) Later in the hearing, when the child's attorney questioned the department social worker as to why the child's school had been changed following her removal from the home, the court asked how that information would be relevant to the order of temporary custody, and explained: "I see it's irrelevant to the issue of whether she's in imminent physical risk unless you're suggesting that she's going to run away unless she's returned to" her previous school.

The child focuses on S and the observation made in one portion of the court's decision as to whether S is "suitable and worthy," in seeking to demonstrate that the court applied the wrong legal standard. Specifically, the child contends that, "[i]n using this terminology, the trial court appears to have been alluding to its power, under [§] 46b-129 (j),[6] to vest guardianship of a

---

[6] General Statutes § 46b-129 (j) (2) provides in relevant part: "Upon finding and adjudging that any child . . . is uncared for, neglected or abused the court may . . . (B) vest such child's . . . legal guardianship . . . with any

child in any suitable and worthy person *after the child is adjudicated neglected.*" (Emphasis in original; footnote added.) The petitioner responds that the court mentioned "suitable and worthy" only after it had set forth sufficient findings in support of sustaining the order of temporary custody. We agree with the petitioner that the court's use of the phrase "suitable and worthy" does not lead to the conclusion that the court improperly used that standard in sustaining the order of temporary custody.[7]

We first note that S is not a party in this action, nor was there any motion filed to vest the order of temporary custody in S. Thus, the potential outcomes of the hearing were limited to the court sustaining the order of temporary custody, with the custody of the child being vested in the petitioner, or vacating the order of temporary custody, with the child returning to *the respondent's* care. After setting forth several findings with respect to the respondent's alcohol use and inability to serve as a full-time caretaker, the court also summarized the evidence it had received with respect to S, with whom the respondent left the child when she disappeared. The court observed that S had been convicted of a violent sexual assault, he had his parental rights with respect to another child terminated, the

other person . . . found to be suitable and worthy of such responsibility by the court, including, but not limited to, any relative of such child . . . by blood or marriage . . . ."

[7] Because we reject the child's argument that the court applied the "suitable and worthy" standard, we need not address her argument that the evidence did not satisfy that standard. The child also requests this court to hold, "as a matter of substantive due process, [that] the mere allegation that a child was left in the care of an otherwise competent adult who lacked legal authority to consent to medical care, without specific factual allegations tending to show risk factors unique to that child, cannot constitute a basis for sustaining an order of temporary custody." Because the fact that the child was left with a caretaker was not the sole basis for the court's findings underlying its sustaining of the order of temporary custody, we reject the child's request.

department previously had substantiated allegations of physical abuse by him against a stepson, and he had sent potentially concerning text messages to the child in the present case. The court remarked: "I can't at this point find him suitable and worthy. I'm not saying he's unsuitable or unworthy. I'm saying I cannot find him to be suitable and worthy. So, based on a predictive neglect finding as to the caregiver whom mother had been vesting care, the court finds that there's an element of predictive neglect there, that he may be an inappropriate caregiver given his background."

We are not convinced that these remarks demonstrate that the trial court used the legal standard applicable to the vesting of guardianship, as set forth in § 46b-129, in rendering its decision sustaining the order of temporary custody. As noted previously, the court accurately set forth the relevant legal standard on more than one occasion and made appropriate findings in support of that legal standard. See *In re Xavier H.*, supra, 201 Conn. App. 100 (where court made sufficient factual findings to meet statutory standard and correctly set forth legal standard elsewhere in its memorandum of decision, imprecision in conclusory statement did not reflect application of incorrect legal standard); see also *In re Averiella P.*, 146 Conn. App. 800, 805, 81 A.3d 272 (2013) (although court used phrase "potential risk of harm" in ruling on motion to transfer guardianship, it did not use it as sole basis for finding transfer of guardianship was in child's best interest). Having considered the challenged portion of the court's decision within the context of the court's overall analysis; see *In re James O.*, 322 Conn. 636, 654, 142 A.3d 1147 (2016); we conclude that the court, in sustaining the order of temporary custody, did not apply an incorrect legal standard.

The judgment is affirmed.

In this opinion the other judges concurred.